STATE of Iowa, Appellee,

v.

Dale MARTI, Appellant.

No. 62510.

Supreme Court of Iowa.

March 19, 1980.

Gerald J. Kucera and Francis J. Pruss, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Kathy Krewer, Asst. Atty. Gen., Eugene J. Kopecky, Linn County Atty., and Susan L. Weller, Asst. Linn County Atty., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, ALLBEE, and LARSON, JJ.

ALLBEE, Justice.

Defendant Dale Marti and his girl friend Gloria Hoover spent the late afternoon of February 16, 1978, together drinking beer and playing pool at a bar in Cedar Rapids. They left the bar early in the evening to return to the home where they were living together. Later that evening in their home, Gloria sustained a fatal gunshot wound. Defendant was subsequently indicted for murder in the second degree, but convicted by a jury of the lesser included offense of involuntary manslaughter, in violation of section 707.5(2), Supplement to the Code 1977. The jury, in response to a special interrogatory, found that Gloria shot herself. It is from this conviction and the resulting sentence that defendant appeals.

From the evidence presented at trial, the jury could have found these additional facts. Gloria had been depressed prior to her death, principally because she had lost custody of her children from a prior marriage and was not permitted to see them very often. On various occasions she made comments to the effect that life was not worth living and that she might kill herself. She also spoke to defendant and others of joining her two brothers who had both committed suicide.

The events immediately preceding Gloria's death began with her picking up a revolver sometime after defendant and she returned home. As she was unable to load it, she asked defendant to help her. Defendant changed the cylinder on the gun so as to be able to load it with ammunition available. Then, according to his testimony, he put three bullets in the gun, rotated the cylinder and fired twice on empty chambers. Next, he set the weapon down uncocked, within arm's reach of Gloria. Gloria was very intoxicated at the time. She picked up the gun, turned it towards her abdomen and fired. She died shortly thereafter.

We now take up the numerous grounds of error assigned by defendant.

I. *Did trial court err in overruling defendant's motion for a supplemental, supplemental bill of particulars?*

The original indictment filed against defendant stated:

> The Grand Jurors of the County of Linn accuse Dale Marti of the crime of murder in the second degree in violation of Section 707.1 & 707.3, Iowa Criminal Code, and charge that the said Dale Marti did on or about the 16th day of February, A.D., 1978, in the County of Linn and State of Iowa, did [sic] murder Gloria Hoover.

In response to defendant's motion for a bill of particulars, the State voluntarily filed the following:

> That on or about February 16, 1978, at approximately 7:15 P.M., the defendant, Dale Marti, used a deadly and dangerous weapon to wit: a Ruger Blackhawk .357 magnum caliber revolver in a dangerous manner and that said use resulted in the death of Gloria Jean Hoover by means of a gunshot wound caused by the firing of the above described weapon.

Subsequently, defendant filed a motion for a supplemental bill of particulars, to which the State filed a resistance. After hearing oral argument on the matter, trial court granted defendant's motion. Its ruling directed the State to set forth the specific acts, whether in the alternative or not,

upon which it relied. However, it also cautioned that it was not to be construed as forcing the State to elect or narrow its theory of the case. The supplemental bill of particulars which the·State then filed stated:

1. That on the date charged in the indictment, the defendant prepared the weapon which caused the death of Gloria Jean Hoover.

2. That the defendant's acts in the preparation of the gun for Gloria Jean Hoover and making it available to her while she was intoxicated and suicidal, constituted a use of deadly and dangerous weapon in a dangerous manner, which resulted in the death of Gloria Jean Hoover and was the direct cause of her death.·

3. That the defendant prepared the gun which caused the death of Gloria Jean Hoover, pointed the gun in her direction and said gun was discharged causing the death of Gloria Jean Hoover.

In response, defendant filed a motion for a second supplemental bill of particulars, alleging that the third paragraph of the State's supplemental bill was deficient for failing to specify by whom the gun was discharged. That motion was overruled, and defendant now challenges trial court's ruling.

■ Whether or not to grant a motion for a bill of particulars rests in the discretion of the trial court, and its decision will not be disturbed absent an abuse of discretion. *State v. Gartin*, 271 N.W.2d 902, 912 (Iowa 1978); *State v. Bean*, 239 N.W.2d 556, 562 (Iowa 1976). In overruling the motion, trial court reasoned that defendant was already apprised of the particulars of the offense sufficiently to fairly enable him to prepare his defense.

■ That is the appropriate standard for determining whether such motions may be granted. *See State v. Willis*, 250 N.W.2d· 428, 431 (Iowa 1977); Iowa R.Crim.P. 10(5). And defendant has not shown that this standard was violated here. Defendant has not indicated that he was hampered in his defense, nor surprised by any evidence presented at trial nor in any other actual way prejudiced by denial of the motion. Consequently, we decline to reverse trial court's exercise of discretion. *See United States v. Mackey*, 551 F.2d 967, 970 (5th Cir. 1977) (dictum); *United States v. Dulin*, 410 F.2d 363, 364 (4th Cir. 1969) (per curiam); *United States v. White*, 370 F.2d 559 (7th Cir. 1966); *United States v. Kushner*, 135 F.2d 668, 673 (2nd Cir.), *cert. denied*, 320 U.S. 212, 63 S.Ct. 1449, 87 L.Ed. 1850 (1943); *Truck Drivers' Local No. 421 v. United States*, 128 F.2d 227, 233–34 (8th Cir. 1942); *Ward v. Commonwealth*, 205 Va. 564, 569,· 138 S.E.2d 293, 297 (1964) (requiring prejudice for reversal); 1 C. Wright, *Federal Practice & Procedure: Criminal* § 130, at 295 (1969).

■ Contrary to his assertion, defendant was not deprived of information as to the specific acts of which he was accused, to which he was entitled under *State v. Conner*, 241 N.W.2d 447, 452 (Iowa 1976), and *State v. Lass*, 228 N.W.2d 758, 765 (Iowa 1975). The weight of authority holds that if an accused has been fully advised of the particulars of the offense by the State, although not necessarily by solely the indictment, the refusal of a bill of particulars does not constitute error. The employment of means other than a bill of particulars for informing the defendant may make a bill of particulars unnecessary. *See, e. g., Demetree v. United States*, 207 F.2d 892, 894–95 (5th Cir. 1953) (prosecutor's oral statement of government's case); *United States v. Corbin Farm Service*, 444 F.Supp. 510, 537 (E.D.Calif.), *aff'd per curiam*, 578 F.2d 259 (9th Cir. 1978) (government information provided during oral argument); *United States v. White*, 386 F.Supp. 882, 885 (E.D. Wis.1974) (government's investigative file and other materials); *United States v. Mazzella*, 295 F.Supp. 1033, 1037 (S.D.N.Y.1969) (mem.) (suppression hearing); *State v. Ware*, 345 So.2d 33, 35 (La.1977) (preliminary examination). *See generally* II C. Torcia, *Wharton's Criminal Procedure* § 355, at 288–89 (12th ed. 1975); Annot., 5 A.L.R.2d 444, 454–56 (1949); 41 Am.Jur.2d *Indictments & Informations* § 166 (1968); 42 C.J.S. *Indictments & Informations*

§ 156(b), at 1099 (1944). This court has previously approved consideration of the minutes of evidence attached to the indictment or information in passing on the adequacy of the notification to defendant of the particulars of the charge. *Lass*, 228 N.W.2d at 765. We do not construe our new code provision for bills of particulars, which omits reference to consideration of the minutes of evidence when determining whether a bill should be granted, *compare* § 773.6(1), (2), The Code 1975 (repealed by 1976 Session, 66th G.A., ch. 1245(4), § 526) *with* Iowa R.Crim.P. 10(5), to alter the propriety of considering minutes for that purpose. *Cf. People v. Fochs*, 40 Ill.App.3d 966, 968–69, 353 N.E.2d 326, 329 (1976) (no prejudicial error from State's failure to file bill of particulars, pursuant to essentially same statutory provision, Ill.Ann.Stat. ch. 38 § 111–6 (Smith Hurd 1970), because requested information was supplied by amended complaint) (alternative holding); *State v. Hill*, 211 Kan. 287, 296, 507 P.2d 342, 350 (1973) (substantially identical statutory provision for bill of particulars, Kan. Stat. § 22–3201(5) (Supp.1979), no impediment to ruling that bill of particulars obviated by facts brought out at preliminary hearing).

Examination of the minutes attached to the indictment in this case reveals that the State had evidence to support either a theory that defendant shot Gloria or a theory that she shot herself. The bill of particulars could not be used to coerce the State to elect only one of its theories to pursue for conviction. *Conner*, 241 N.W.2d at 452. *See* Iowa R.Crim.P. 10(5) (confining State's evidence at trial to particulars of bill). While the State could have both safeguarded its alternative theories and advised defendant more clearly of the acts of which he was accused by stating in the supplemental bill that either defendant or Gloria fired the fatal shot, it was not prejudicial error for it to fail to do so. Any ambiguity or indefiniteness about who fired the shot was cured by the specificity of the minutes.

Defendant argues that he was deprived of his constitutional right to be informed of the nature and cause of the accusation. *See* U.S.Const. amend. VI; Iowa Const. art. 1, § 10. The due process guarantee of the fourteenth amendment requires that the accused be advised of the specific charge against him. *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644, 647 (1948). Specifically, the defendant should be apprised of the crime charged with sufficient certainty to enable him to prepare his defense and to protect against another prosecution for the same offense. *Rosen v. United States*, 161 U.S. 29, 40, 16 S.Ct. 434, 438, 40 L.Ed. 606, 609 (1896). In this case, the indictment informed defendant of the name of the crime with which he was charged (second degree murder), the name of the victim and the Code section defining the offense. The bills of particulars additionally advised defendant of the date of the offense, the nature of the murder weapon and certain specific acts of the defendant which allegedly caused the victim's death. Consequently, we conclude that the indictment, as supplemented by the bills of particulars, was sufficient. *Cf. United States v. Hope*, 53 F.R.D. 385, 386–87 (E.D.Wis.1971) (failure of indictment to indicate whether defendant charged as principal or as aider and abettor did not render it constitutionally insufficient); *State v. Cooper*, 249 La. 654, 658–62, 190 So.2d 86, 87–89 (1966), *overruled on other grounds in State v. Lee*, 331 So.2d 455 (La. 1975) (indictment informing defendant of charge of manslaughter, statute defining offense, name of victim and accused, and date and place of offense constitutionally sufficient).

Finally, defendant asserts that indefiniteness in a bill of particulars of the sort alleged here makes determinations on motions to dismiss, brought under Iowa R.Crim.P. 10(6)(a), difficult. We do not discern, however, that trial court was accordingly hampered in ruling upon the motion raised by defendant. To that ruling we now turn for a closer examination.

II. *Did trial court err in overruling defendant's motion to dismiss?*

After defendant's motion for a second supplemental bill of particulars was over-

ruled, he filed a motion to dismiss the indictment pursuant to Iowa R.Crim.P. 10(6)(a), which was also overruled. That rule provides:

> If it appears from the bill of particulars furnished pursuant to this rule that the particulars stated do not constitute the offense charged in the indictment . . . , or that the defendant did not commit that offense . . . , the court may and on motion of defendant shall dismiss the indictment . . . unless the prosecuting attorney shall furnish another bill of particulars which so states the particulars as to cure the defect.

Specifically, defendant urges that the indictment should have been dismissed because the State's bill of particulars and supplemental bill failed to state that defendant actually killed Gloria Hoover although a requisite element of murder is killing another person. § 707.1, Supplement to the Code 1977.

■ The State's counter-argument eludes the issue. It contends that because the indictment itself is sufficient at law to withstand a motion to dismiss under *State v. Beyer*, 258 N.W.2d 353, 357 (Iowa 1977) ("A sufficient indictment or information simply may allege 'A. B. murdered C. D.' "), any motion to dismiss the indictment was properly overruled. What the State ignores is that rule 10(6)(a) gives a defendant a second chance to set aside the indictment, by securing a bill of particulars. *State v. Hall*, 235 N.W.2d 702, 710 (Iowa 1975). This follows from the fact that a necessary predicate of a bill of particulars is a sufficient indictment or information. *See* Iowa

R.Crim.P. 10(5) ("*When an indictment or information charges an offense in accordance with this rule*[1] but fails to specify the particulars of the offense sufficiently to fairly enable the defendant to prepare his or her defense," a bill of particulars may be required.) (Emphasis added.) *Accord*, 42 C.J.S. *Indictments & Informations* § 156(d), at 1102 (1944). It also follows from the fact that the question of whether the indictment itself is sufficient is not the same as the question of whether the particulars in the bill of particulars constitute the offense charged in the indictment.

Although this court has not had occasion to extensively examine the effect of rule 10(6)(a) (formerly § 773.7, The Code 1977), the Louisiana Supreme Court has construed a similar statutory provision, La.Code Crim. Pro.Ann. art. 485 (West 1967).[2] According to *State v. Gerstenberger*, 260 La. 145, 150, 255 So.2d 720, 722 (1971), a court, in considering this motion, is to accept as true the facts set out in the bill of particulars and indictment and determine if they charge a crime as a matter of law. The rationale for this provision is explained in *State v. Legendre*, 362 So.2d 570, 571 (La.1978):

> It will not do to base an indictment for a serious offense . . . upon an allegation of fact which cannot conceivably satisfy an essential element of the crime, and compel the accused to withstand the rigors of a jury trial with no expectation that a conviction can be supported by such an allegation.

■ In considering the bills of particulars in question on this appeal, we first note that they are no longer reviewable for their

---

1. "[T]his rule" apparently refers to Iowa R.Crim.P. 4, of which rule 10(5) was originally drafted as a subdivision. *See* R. Carlson, Rule 4 (Indictment), A Symposium on the New Iowa Criminal Code 171 (Nov. 3–4, 1977) (presented by The Association of Trial Lawyers of Iowa).

2. That section provides:
 > If it appears from the bill of particulars furnished under Article 484, together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured. The defect will be cured if the district attorney furnishes, within a period fixed by the court and not to exceed three days from the order, another bill of particulars which either by itself or together with any particulars appearing in the indictment so states the particulars as to make it appear that the offense charged was committed by the defendant, or that there is no ground for quashing the indictment, as the case may be.

sufficiency to constitute second degree murder. Because defendant was convicted of the lesser included offense, involuntary manslaughter, any defect in the indictment related to its charging second degree murder is now immaterial. *State v. Harness*, 214 Iowa 160, 163, 241 N.W. 645, 646 (1932); 42 C.J.S. *Indictments & Informations* § 276 (1944). If the sufficiency of the indictment as to that charge is immaterial, so too is the sufficiency of the bills of particulars.

 Defendant has not explicitly challenged the sufficiency of the bills' description of defendant's acts which constituted involuntary manslaughter. Nonetheless, we will consider the issue because the "killing" required for murder is essentially equivalent to the "causing death" required for involuntary manslaughter. *See* §§ 707.-1, .5. It is an element of causation in both crimes. It requires that the defendant did some act which resulted in the victim's death. *See, e. g., State v. Shimon*, 182 N.W.2d 113, 115–16 (Iowa 1970); *State v. McClain*, 256 Iowa 188–89, 125 N.W.2d 764, 771–72 (1964). *See generally* W. LaFave & A. Scott, *Handbook on Criminal Law* § 35, at 247–48 (1972). It is not essential for conviction in all cases that the accused actively participated in the immediate physical impetus of death. *See Shimon*, 182 N.W.2d at 115–16 (driving in drag race considered proximate cause of death of passenger in other vehicle, which went out of control). *See generally* 40 Am.Jur.2d *Homicide* §§ 18–22 (1968). In this case, the bills of particulars stated that the defendant did certain acts which resulted in the death of Gloria Hoover. In so doing, they satisfied the causation element of the crime.

III. *Did trial court err in overruling defendant's motion for an adjudication of law points?*

On the same date that defendant filed his pretrial motion to dismiss, he also filed a motion for an adjudication of law points in four divisions. The first three divisions sought an adjudication of whether the facts alleged in the three paragraphs of the State's supplemental bill of particulars constituted second degree murder, as defined in sections 707.1, .3, Supplement to the Code 1977. The fourth division requested the court to determine that neither suicide nor aiding and abetting suicide constitutes a crime in this state. Trial court overruled the first three divisions of defendant's motion because they sought resolution of factual disputes and because whether second degree murder or some included offense would be submitted to the jury was unknown at that stage of the proceedings. The court did, however, rule that suicide is not a crime in Iowa and that persons cannot be convicted of aiding and abetting an activity which is not criminal.

 On appeal, defendant challenges the denial of an adjudication regarding the first three divisions of his motion. Motions for adjudications of law points are allowed in criminal cases by authority of Iowa R.Crim.P. 10(2). *State v. Iowa District Court*, 271 N.W.2d 704, 706 (Iowa 1978). As required under Iowa R.Civ.P. 105, such motions may seek to resolve only issues which are legal in nature. *Iowa District Court*, 271 N.W.2d at 706. Contrary to one of defendant's arguments, no factual issues may be thus resolved. Iowa R.Crim.P. 10(8)[3] does not provide otherwise; it merely refers to the fact that factual issues may be resolved in determining some types of pretrial motions, not all pretrial motions.

 Alternatively, defendant argues that the factual allegations in the supplemental bill were not controverted. We disagree. By pleading not guilty to the charge, defendant controverted and placed in issue every material allegation of the indictment. *State v. Nelson*, 234 N.W.2d 368, 372 (Iowa 1975). He neither stipulated to any facts alleged in the supplemental bill of particulars nor in any other way superseded that effect of his plea. The only

---

**3.** Rule 10(8) provides: "A pretrial motion shall be determined without unreasonable delay. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record."

sense in which there was no factual dispute is that defendant may have considered the factual allegations in the supplemental bill of particulars, upon which the legal determinations were sought, to be purely hypothetical. We have already expressed our unwillingness to require trial courts to spend time answering "speculative and abstract legal questions" which may become moot by the time the facts are finally determined. *Iowa District Court*, 271 N.W.2d at 706; *see Andersen Construction Co. v. National Bank*, 262 N.W.2d 563, 566 (Iowa 1978). The first three divisions of the motion were appropriately overruled.

IV. *Did trial court err in refusing to instruct jury its order adjudicating the law point that aiding and abetting suicide is not a crime?*

 As previously indicated, trial court ruled on the fourth division of defendant's motion for an adjudication of law points that "suicide is not a crime in Iowa, and persons cannot be found guilty of committing an offense by aiding and abetting if the offense is not a crime." The State did not appeal this ruling. Later, defendant requested that the same ruling be submitted as a jury instruction. Trial court denied that request and instead instructed, "It is the law of Iowa that the taking of one's own life, that is, suicide, is not a criminal offense.[4] The Defendant contends Gloria Hoover took her own life and that consequently he is not guilty of any offense."[5]

Defendant argues that trial court's ruling adjudicating the law point became the law of the case during further proceedings in trial court and that, consequently, its refusing to submit the proposed instruction was reversible error. This court has previously held that a trial court's failure to submit instructions logically dictated by its prior adjudication of law points does constitute error which justifies granting a new trial. *Litchford v. Iowa-Illinois Gas & Electric Co.*, 247 Iowa 947, 75 N.W.2d 346 (1956). Absent an appeal from the ruling, whether correct or erroneous, it is final for all purposes connected with the ensuing trial. *Id.* at 954, 75 N.W.2d at 349–50 (special concurrence); *Berger v. Amana Society*, 253 Iowa 378, 382, 111 N.W.2d 753, 755 (1962); Iowa R.Civ.P. 105 (order adjudicating law points "shall not be questioned on the trial of any part of the case of which it does not dispose").

 This court has not, however, previously addressed the question of what binding effect attaches to an order adjudicating law points which was issued without statutory authority. That situation exists here. Iowa R.Civ.P. 105 strictly limits the authority of trial courts for making pretrial determinations to rulings on points of law which are raised in the pleadings and which go to the whole or any material part of the case. These limitations are applicable to rule 10(2) motions raised in criminal cases as well. *See State v. Iowa District Court*, 271 N.W.2d 704, 706 (Iowa 1978) ("[W]e believe the legislature provided this tool in the same form we have known in civil practice."). Trial court's order in this case exceeded the authority provided in rule 105 in several respects. First, it did not address exclusively a point of law because its ruling required the determination of the existence of a set of facts which had not been admitted by the parties, that is, that defendant had aided and abetted Gloria in committing suicide. Secondly, the point was not raised in the pleadings; the State did not specifically allege either in the indictment or in its

---

4. This court so held in *State v. Campbell*, 217 Iowa 848, 849–53, 251 N.W. 717, 717–19 (1934).

5. As defendant correctly points out, the instruction trial court submitted on suicide was improper for merely stating the issue of whether suicide constituted a defense. It is the court's duty to instruct on the legal principles applicable to the issues as well. *See, e. g., State v. Jacoby*, 260 N.W.2d 828, 836 (Iowa 1977); *State v. Templeton*, 258 N.W.2d 380, 382 (Iowa 1977). While improper, the instruction did not constitute reversible error because the jury had been previously advised of the applicable legal principles by the instruction on intervening, superseding causes. *See, e. g., State v. Norton*, 227 Iowa 13, 22–23, 286 N.W. 476, 481 (1939).

bills of particulars that defendant had aided and abetted her suicide. Finally, the point was not material to the case.

Defendant probably thought the point to be material because, in his opinion, it should have served as a defense. We disagree. Other courts have been faced with the argument that aiding and abetting suicide is a defense to a homicide charge because, as in Iowa, suicide itself is not a crime in the jurisdiction concerned. All but one indicated that the question of whether the defendant committed homicide was independent from any consideration of whether he might also be labeled an accessory or principal in the second degree to suicide. The asserted defense was rejected as immaterial. *See Burnett v. People*, 204 Ill. 208, 220–24, 68 N.E. 505, 509–11 (1903); *Blackburn v. State*, 23 Ohio St. 146, 163–64 (1872); *People v. Roberts*, 211 Mich. 187, 195–98, 178 N.W. 690, 692–93 (1920); *cf. Persampieri v. Commonwealth*, 343 Mass. 19, 21–22, 175 N.E.2d 387, 389 (1961) (indictment count charging defendant with murder by aiding and abetting suicide held susceptible to construction that defendant charged as principal in first degree; whether suicide is crime in Massachusetts not considered). *But see Sanders v. State*, 54 Tex.Cr.R. 101, 104–05, 112 S.W. 68, 70 (1908), *overruled on other grounds in Aven v. State*, 102 Tex.Cr. 478, 277 S.W. 1080 (1925) ("the punishment of persons connected with the suicide, by furnishing means or agencies or affording an opportunity to the suicide to take his or her life, has not obtained and does not obtain in Texas" because suicide not a crime in Texas). *See generally* 40 Am.Jur.2d *Homicide* § 585 (1968); Annot., 13 A.L.R. 1259 (1921); W. LaFave & A. Scott, *Handbook on Criminal Law* § 74, at 570–71 (1972); Note, *The Criminal Aspect of Suicide*, 39 Dick.L.Rev. 42, 45–48 (1934); *see also State v. Campbell*, 217 Iowa 848, 853–54, 251 N.W. 717, 719 (1933) (although attempted suicide did not

constitute unlawful act upon which felony murder instruction could be based, court reserved question of whether same acts could justify conviction of murder or manslaughter for reckless use of a deadly weapon).

Although the distinction between aiding and abetting suicide and homicide based on the same conduct is somewhat paradoxical, we believe it has merit. The criminal is held to answer for his conduct because it constitutes murder or manslaughter, not because it coincidentally helped someone to die who wanted to die anyway. Our law makes no distinctions as to the identity of the victim [6] in determining culpability for homicide. The only reason we view suicide noncriminal is that we consider inappropriate punishing the suicide victim or attempted suicide victim, not that we are concerned about that person's life any less than others' lives. To say that aiding and abetting suicide is a defense to homicide would denigrate these views.

We now turn to the consequences of our determination that the adjudication of law point made here was unauthorized. This court has held that imposition of a sentence that varies with the statutory requirements is a "void act." *State v. Shilinsky*, 248 Iowa 596, 603, 81 N.W.2d 444, 449 (1957); *accord, State v. Krivolary*, 258 N.W.2d 157, 158 (Iowa 1977). Similarly, we have held that a trial court's entry of a postconviction judgment of acquittal was void because not permitted by statute. *State v. Deets*, 195 N.W.2d 118, 123–25 (Iowa 1972). And in another opinion, filed by this court today, we hold that the purported admission of a will to probate by a clerk of court is ineffective if a contest of the will is on file because such admission is proscribed by statute. *In re Estate of Franzkowiak*, 290 N.W.2d 1, 4–5 (Iowa 1980). Courts in other jurisdictions have in like manner held that an order made in

---

**6.** We do not here consider victims who may be deemed legally dead under § 702.8, Supplement to the Code 1977, or whose medical treatment is terminated pursuant to a right to privacy which outweighs the State's interest in the preservation and sanctity of human life, *see In re Quinlan*, 70 N.J. 10, 38–42, 51–52 & n.9, 355 A.2d 647, 662–64, 669–70 (1976), *cert. denied*, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976).

excess of the trial court's statutory authority is void. *E. g., Parker v. Shell Oil Co.*, 55 Cal.App.2d 48, 52–53, 130 P.2d 158, 160–61 (1942); *Herskovitz v. Travelers Insurance Co.*, 272 App.Div. 584, 585–86, 73 N.Y.S.2d 851, 853, *appeal denied*, 273 App.Div. 758, 75 N.Y.S.2d 533 (1947), *appeal dismissed*, 297 N.Y. 863, 79 N.E.2d 270 (1948); *see* 60 C.J.S. *Motions & Orders* § 65(e) (1969). As it is void, the order may be disregarded during subsequent proceedings. *See, e. g., Deets*, 195 N.W.2d at 125. In fact, enforcement of the void order may constitute reversible error. *Parker*, 55 Cal.App.2d at 53, 130 P.2d at 161. In light of these principles, we hold that trial court's order adjudicating the law point was void and that its later refusal to instruct in accordance with that order was not error.

V. *Did trial court err in overruling defendant's motion for a judgment of acquittal?*

Defendant contends that trial court erred in failing to carry out its order adjudicating the law point not only by failing to so instruct the jury but also by overruling his motion for judgment of acquittal after the jury returned its verdict. Defendant bases this contention upon Iowa R.Crim.P. 22(1), which provides in part, "Upon a verdict of not guilty for the defendant, or special verdict upon which a judgment of acquittal must be given, the court must render judgment of acquittal immediately."

Defendant reasons that the jury's verdict of guilty, combined with its answer to the interrogatory that Gloria shot herself, was tantamount to a finding that defendant's only culpable conduct was aiding and abetting suicide. By his thinking, trial court's prior ruling that aiding and abetting a non-criminal activity does not constitute a crime mandated its overturning the verdict supposedly based upon that theory.

As previously discussed, the order adjudicating the law point was void. Thus trial court's failure to enforce it as the law of the case in any respect was not error.

Overruling defendant's motion was also proper for a more fundamental

alternative reason. Iowa R.Crim.P. 18(10)(b) does not authorize a trial court's entry of judgment of acquittal in contravention of a jury's verdict of guilty unless the court has reserved decision on a motion for judgment of acquittal made at the close of all evidence. Trial court immediately overruled all of defendant's pre-verdict motions for judgment of acquittal, reserving judgment on none. Otherwise, judgment of acquittal may be rendered only if the jury reached a verdict of not guilty or a special verdict, as distinguished from an interrogatory, *compare* Iowa R.Civ.P. 205 *with* Iowa R.Civ.P. 206, which called for a judgment of acquittal. Iowa R.Crim.P. 22(1). Neither such type of verdict was returned here. As noted previously, we have in the past as well held that trial courts in this state are without authority to enter postconviction judgments of acquittal. After a guilty verdict is returned, relief is limited to arrest of judgment, Iowa R.Crim.P. 23(3), new trial, Iowa R.Crim.P. 23(2), or the postconviction procedure provided in chapter 663A of the Code. *State v. Deets*, 195 N.W.2d 118, 123–25 (Iowa 1972); *see State v. Stennett*, 220 Iowa 388, 395, 260 N.W. 732, 736 (1935). Consequently, trial court's entry of a judgment of acquittal at that juncture would have been void and of no effect. *Deets*, 195 N.W.2d at 125. Its failure to enter a void judgment was certainly not error.

VI. *Did trial court err in failing to instruct that suicide is a complete defense and in instructing on lesser included offenses?*

Two issues raised by defendant are considered here together because they are premised upon the same notion: that Iowa case law holds that suicide is a complete defense to any homicide charge.

By one issue, defendant contends that trial court erred in instructing the jury that voluntary and involuntary manslaughter could be considered as lesser included offenses. Referring to the tests for determining whether to submit a lesser offense described in *State v. Reese*, 259 N.W.2d 771, 778 (Iowa 1977), defendant concedes that the legal test was met but argues that there

was no factual basis in the record sufficient to meet the factual test. His authority is *State v. Cater,* 100 Iowa 501, 504–05, 69 N.W. 880, 881 (1897), which upheld the trial court's refusal to submit lesser offenses because the facts showed that the defendant was either guilty of the crime charged, murder, or not guilty at all. He also cites *State v. Beeson,* 155 Iowa 355, 361–62, 136 N.W. 317, 320 (1912), which stated that proof of suicide could entitle the defendant to an acquittal of his murder charge.

By the other issue, defendant contends that trial court erred in failing to submit his proposed instruction that "if you find from the evidence that the deceased took her own life, or if the evidence thereof made suicide so probable as to create in the minds of the jurors a reasonable doubt of the Defendant's guilt, then the Defendant is entitled to be acquitted." This language was taken from the previously cited excerpt in *Beeson,* which was part of a discussion of the defendant's right to present evidence of the decedent's predisposition towards suicide.

Neither *Cater* nor *Beeson* stand for the broad principle that defendant ascribes to it, that is, that suicide is always a defense to murder and any lesser included offenses. Neither case involved facts requiring a determination of whether assisting or in any other way stimulating suicide may provide the basis for a homicide conviction. Consequently, their announcement that suicide is a defense is limited to factual situations such as theirs, where the only evidence of

defendant's culpability is that he pulled the trigger or otherwise physically performed the final act of killing.

*Beeson* and *Cater* have no application here because there was evidence in the record to support a finding not only that defendant discharged the fatal bullet but also that he performed acts to facilitate the suicide. We believe that preparing and providing a weapon for one who is unable to do so and is known to be intoxicated and probably suicidal are acts "likely to cause death or serious injury," within the definition of involuntary manslaughter found in section 707.5(2), Supplement to the Code 1977. *Cf. Persampieri v. Commonwealth,* 343 Mass. 19, 22–23, 175 N.E.2d 387, 389–90 (1961) (defendant's guilty plea to manslaughter, defined as wanton or reckless disregard of probable harmful consequences, found warranted by facts that defendant taunted emotionally disturbed wife, who had been drinking and had threatened suicide, told her where rifle was, loaded it for her and suggested how she might reach the trigger, enabling her to shoot herself); *State v. Bier,* 591 P.2d 1115, 1118 (Mont.1979) (conviction of negligent homicide for wife's suicide upheld as "defendant's conduct in pulling out, cocking and throwing a loaded gun within reach of his intoxicated wife clearly qualifies as a gross deviation [from a reasonable standard of care] giving rise to criminal culpability.").[7] Therefore, there was a factual basis for submitting involuntary manslaughter[8] as a lesser included offense, and suicide could not have been properly instructed as a defense.

7. A number of states have made intentionally aiding suicide a crime. *E. g.,* Ark.Stat.Ann. § 41–1504(1)(b) (1977); Colo.Rev.Stat. § 13–3–104(1)(b) (1973); Conn.Gen.Stat. § 53a–56(a)(2) (1979); Fla.Stat. § 782.08 (1979); Kan. Stat. § 21–3406 (1974); Me.Rev.Stat. tit. 17–A, § 204(1) (Supp.1979); Minn.Stat.Ann. § 609.215 (West 1964); Mo.Rev.Stat. § 565.021 (1978); N.J.Stat.Ann. § 2c:11–6 (West Supp.1979). *See also* Model Penal Code § 210.5(2) (Proposed Official Draft 1962).

8. There was some evidence in the record tending to prove the provocation necessary for voluntary manslaughter, *see* § 707.4, Supplement to the Code 1977, *i. e.,* that defendant was in love with Gloria and that she told him in the

bar on the day of her death that she intended to break up with him. While the evidence as a whole was probably insufficient to support a guilty verdict of voluntary manslaughter, the instruction did not constitute prejudicial error because defendant was ultimately convicted of the lesser offense of involuntary manslaughter. *State v. Sayles,* 173 Iowa 374, 381–83, 155 N.W. 837, 839–40 (1916) (If there is some evidence tending to prove the higher offense and defendant is convicted of the lower offense, submission of the higher offense is not reversible error even though conviction of that offense could not be allowed to stand.); *accord, State v. Van,* 232 Iowa 34, 37–39, 2 N.W.2d 748, 749–50 (1942).

**584**

VII. *Did trial court err in overruling defendant's motions for judgment of acquittal made at various times throughout the trial?*

██ Defendant moved for judgment of acquittal upon the completion of the State's opening statement, the conclusion of presentation of the State's evidence and again upon the conclusion of presentation of all evidence. He argued that the State's case for second degree murder was totally dependent on circumstantial evidence and that in order to sustain a conviction based on such evidence, it must be inconsistent with any rational hypothesis of innocence. As he asserts that suicide was a complete defense and the circumstantial evidence was not inconsistent with Gloria's committing suicide, he contends that his motions should have been granted.

██ Defendant's argument is invalid for at least two reasons. First, as previously noted, suicide was not a complete defense in this case. It certainly was not a defense to involuntary manslaughter, and we need not consider whether it could have nonetheless been a defense to second degree murder because a motion for judgment of acquittal should be denied if there is sufficient evidence to prove a lesser included offense. *See, e. g., United States v. Kelly,* 119 F.Supp. 217, 219–20 (D.D.C.1954); *State v. Vincent,* 321 S.W.2d 439, 441 (Mo.1959) (alternative holding); 23A C.J.S. *Criminal Law* § 1145(3)(e) (1961). The reason for this rule is that an acquittal of the greater offense bars later prosecution of any lesser included offense if, under the indictment for the first offense, defendant could have been convicted of the lesser offense. *Kelly,* 119 F.Supp. at 219; *see State v. Stergion,* 248 N.W.2d 911, 912 (Iowa 1976).

██ Secondly, the rule defendant asserts as proper for evaluating circumstantial evidence was rejected in *State v. O'Connell,* 275 N.W.2d 197, 204–05 (Iowa 1979). Such evidence is now to be viewed no more restrictively than direct evidence.[9]

VIII. *Did trial court's causation instruction constitute error?*

Defendant challenges the causation instruction submitted to the jury on two basic grounds. First, he asserts that it inappropriately adopted the standards of proximate cause applied in civil cases. Secondly, he argues that the instruction was unwarranted by the facts of the case.

Turning to the first grounds, we observe that the instructions bear a close resemblance to I Iowa Uniform Jury Instructions Nos. 2.6, 2.7B, 2.8 (1970), explaining proximate cause and concurring proximate cause, and an excerpt from the recent products liability case of *Haumersen v. Ford Motor Co.,* 257 N.W.2d 7, 15 (Iowa 1977), defining intervening, superseding cause.

We are unwilling to hold as a blanket rule of law that instructions used in civil trials regarding proximate cause are inappropriate for criminal trials. One reason for this is the similar functions that the requirement of proximate cause plays in both sorts of trials. The element of proximate cause in criminal prosecutions serves as a requirement that there be a sufficient causal relationship between the defendant's conduct and a proscribed harm to hold him criminally responsible. *See* J. Hall, *General Principles of Criminal Law* 247 (2d ed. 1960); W. LaFave & A. Scott, *Handbook on Criminal Law* § 35, at 248 (1972). Similarly, in the law of torts it is the element that requires there to be a sufficient causal relationship between the defendant's conduct and the plaintiff's damage to hold the defendant civilly liable. *See* W. Prosser, *Handbook of the Law of Torts* § 41, at 236 (4th ed. 1971).

The basic perspectives of proximate cause that must be examined to determine whether it exists in a given case are also the same in both civil and criminal cases. The first

9. As we conclude that the motions were correctly overruled, we need not address the issue of whether a motion for judgment of acquittal, or as defendant alternatively labeled it, a motion to dismiss, may ever be properly entertained at the conclusion of the State's opening statement. We note that our rules do not specifically provide for such a motion at that time. *See* Iowa R.Crim.P. 10(4), 18(10).

perspective is cause in fact. Factual causation is often expressed in terms of the *sine qua non* test: but for the defendant's conduct, the harm or damage would not have occurred. W. LaFave & A. Scott, *supra* § 35, at 249; W. Prosser, *supra* § 41, at 237–39; *see, e. g., Cronk v. Iowa Power & Light Co.,* 258 Iowa 603, 613, 138 N.W.2d 843, 848–49 (1965); *Christianson v. Kramer,* 255 Iowa 239, 249–50, 122 N.W.2d 283, 289 (1963).

That the *sine qua non* test, employed by trial court, is equally applicable to criminal and civil trials is beyond question. W. LaFave & A. Scott, *supra* § 35, at 251 n.22; *see State v. Shimon,* 182 N.W.2d 113, 115 (Iowa 1970) (concluding application of *sine qua non* test of causation found in I Iowa Uniform Jury Instructions No. 2.6 (1970) not prejudicial in manslaughter case).

The second perspective of causation that must be examined in both tort and criminal trials is legal causation. Dean Prosser remarked that "this becomes essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred." W. Prosser, *supra* § 42, at 244. Because it is based upon such a nebulous, undefined consideration as policy, a universal formula for legal causation is untenable. Rather, it is most fruitfully approached by using criteria adapted to a particular problem area, such as intervening causes. *Id.* § 42, at 249–50; *see* Restatement (Second) of Torts § 431 (1965) (establishing test for legal cause that refers to rules governing various situations) (applied by this court in *Frederick v. Goff,* 251 Iowa 290, 298, 100 N.W.2d 624, 629 (1960)).

We recognize that different policy considerations may come into play in criminal prosecutions than in civil trials. *See, e. g.,* W. LaFave & A. Scott, *supra* § 35, at 251–52; Comment, *The Use of the Tort Liability Concept of Proximate Cause in Cases of Criminal Homicide,* 56 Nw.U.L.Rev. 791, 791–92 (1962). An argument could be made that these differences should be reflected in the proximate cause instructions used in the different kinds of trials. Yet defendant has

failed to indicate any differences in policy considerations relevant to his case, much less how such differences might have prejudicially affected any particular instruction given here. For a party to preserve for appeal his objections to a trial court's instructions on this amorphous and multifaceted matter of legal causation, he or she must specify the deficiency in narrower terms than a mere assertion that they copy civil instructions. *See, e. g., State v. Brandt,* 182 N.W.2d 916, 917–18 (Iowa 1971); *Noble v. Edberg,* 250 Iowa 1331, 1336–37, 98 N.W.2d 741, 744–45 (1959); *Newman v. Blom,* 249 Iowa 836, 845–46, 89 N.W.2d 349, 356 (1958); Iowa R.Civ.P. 196 (requiring that objections to instructions specify "the matter objected to and on what grounds") (made applicable to criminal trials by Iowa R.Crim.P. 18(7)(f)). *See also Olson v. Des Moines City Railway,* 186 Iowa 384, 397–402, 170 N.W. 466, 470–72 (1919) (applying predecessor to Iowa R.Civ.P. 196). Consequently, we are not here justified in examining the adequacy of the criteria for determining legal cause in these instructions.

Defendant's second ground for his objection to the causation instruction, that it was unjustified by the evidence, was based on his misconception that, once defendant laid the gun down, his participation in causing Gloria's death ended as a matter of law. Accordingly, he requested that trial court give no causation instruction, or, if such an instruction were given, that it include a statement requiring the jury to acquit defendant if it felt the sole proximate cause of Gloria's death was her own act.

We conclude the evidence presented at trial supported the instructions given. Defendant was shown to have provided Gloria with the means to shoot herself by loading the gun and setting it beside her. Thus, the instructions relating to cause in fact were appropriate. The evidence also showed that, after defendant performed these acts, Gloria picked up the gun and shot herself. Hence, the instructions relat-

ing to intervening, superseding causes were also appropriate. An intervening cause is an independent force "which actively operates in producing harm to another after the actor's negligent act or omission has been committed." *Sayre v. Andrews*, 259 Iowa 930, 942, 146 N.W.2d 336, 343 (1966) (quoting Restatement (Second) of Torts § 441(1) (1965)); *see* W. LaFave & A. Scott, *supra* § 35, at 257; W. Prosser, *supra* § 44, at 271. Only intervening causes which are also superseding relieve the defendant of liability. *Haumersen v. Ford Motor Co.*, 257 N.W.2d 7, 15 (Iowa 1977). Thus, it was necessary for trial court to instruct the jury as to criteria for determining whether the intervening act of Gloria's shooting herself was also a superseding act. Trial court would not have been justified in determining, as a matter of law, that her act was a superseding cause. *See id.* (question is for jury when reasonable minds may differ as to outcome of application of test for intervening, superseding cause). *See also State v. Bier*, 591 P.2d 1115, 1118 (Mont.1979); *Commonwealth v. Feinberg*, 433 Pa. 558, 568–69, 253 A.2d 636, 642 (1969) (recognizing that providing means to inflict self-injury may show a sufficient causal connection to sustain a homicide conviction if the self-injury was a foreseeable result).

■ The instruction on intervening, superseding causes made unnecessary the statement that defendant requested to be instructed. If the jury had found Gloria's act in shooting herself to have been an intervening, superseding cause, it would have, in effect, also found it to have been the "sole proximate cause" of her death. Defendant's requested instruction would have added nothing and might have confused the jury. *See* W. Prosser, *supra* § 42, at 244 (word "proximate" is "an unfortunate word, which places an entirely wrong emphasis upon the factor of physical or mechanical closeness").

■ Other objections to the instructions by defendant were waived for their untimely assertion. These objections were raised after the jury returned its verdict, as part of his motion for judgment of acquittal. To be preserved, objections to instructions must be raised prior to jury arguments. Iowa R.Civ.P. 196 (made applicable to criminal trials by Iowa R.Crim.P. 18(7)(f)).

IX. *Did trial court err in excluding evidence of polygraph examination?*

Defendant filed a pretrial request to compel the introduction of results of a polygraph examination of the defendant, which, he alleges, would have shown that defendant was not lying when he said that he did not shoot Gloria. In response, the State filed a resistance to the motion and also a motion in limine, requesting the court to prohibit defendant from in any way disclosing information regarding the polygraph examination at trial. After hearing argument on these motions, trial court overruled defendant's request and sustained the State's motion in limine.

*State v. Conner*, 241 N.W.2d 447, 457 (Iowa 1976), reexamined and reaffirmed our unwavering rule that "polygraph evidence may be admitted into evidence only by stipulation of the parties." In so doing, we rejected arguments defendant again raises here. Specifically, we found no merit in the contention that this rule denies constitutional rights to compulsory process and due process, *id.* at 457–58, or in the assertion that polygraph evidence has attained sufficient scientific acceptance and evidentiary reliability to be admissible absent stipulation, *id.* at 458–59. The latter assessment was recently again reaffirmed in *In re Discharge of Fairbanks*, 287 N.W.2d 579, 582 (Iowa 1980).

In addition to the arguments rejected in *Conner*, defendant asserts two new grounds for error. First, he contends that the State implicitly stipulated to the use of polygraph evidence at trial by permitting a Cedar Rapids police officer to testify before the grand jury which indicted defendant that a polygraph examination given of defendant was inconclusive. In jurisdictions such as Iowa where polygraph evidence is admissible upon stipulation of the parties, there has been recognized an estoppel, or similar theory, requiring that a party be bound by

his stipulation that the results will be admissible evidence. *See, e. g., State v. Galloway,* 167 N.W.2d 89, 93–95 (Iowa 1969); *State v. McNamara,* 252 Iowa 19, 27–29, 104 N.W.2d 568, 573–74 (1960). *See generally* Annot., 53 A.L.R.3d 1005, 1011–14 (1973). However, the stipulation which binds parties is not so imprecisely defined or inferentially established as defendant urges.

■ There are requisites of a binding stipulation which were not met here. First, the stipulation must be agreed to by both parties. Here, defendant's willingness to admit the polygraph testimony was not alone sufficient. As we stated in *State v. Freeland,* 255 Iowa 1334, 1339, 125 N.W.2d 825, 828 (1964), such evidence is not admissible over the State's objection. *See People v. Saffold,* 47 Ill.App.3d 934, 937, 8 Ill.Dec. 286, 289, 365 N.E.2d 524, 527 (1977) (indicating necessity of state's stipulation).

■ Secondly, the stipulation should be a matter of record—either by a filed written document executed by both parties, *see, e. g., McNamara,* 252 Iowa at 27, 104 N.W.2d at 573, or by oral agreement of the parties in open court, *see, e. g., In re Estate of Clark,* 181 N.W.2d 138, 140–41 (Iowa 1970). *Accord, State v. Saia,* 172 Conn. 37, 41, 372 A.2d 144, 147 (1976); *Colbert v. Commonwealth,* 306 S.W.2d 825, 827 (Ky. 1957), *overruled on other grounds in Preston v. Commonwealth,* 406 S.W.2d 398 (1966), *cert. denied,* 386 U.S. 920, 87 S.Ct. 886, 17 L.Ed.2d 792 (1967). *See generally* 83 C.J.S. *Stipulations* § 6(a) (1953). Here, there is no written document or any other evidence in the record of a stipulation by the State.

■ Even if these shortcomings were ignored and the State's conduct before the grand jury were construed as a stipulation as to the admissibility of polygraph evidence in that proceeding, such stipulation would not necessarily extend also to the admissibility of polygraph evidence at trial. In fact, the general rule is that "a stipulation is to be construed as covering the situation then existing, and not as controlling future conditions not in contemplation." 83

C.J.S. *Stipulations* § 11(a), at 29 (1953); *accord, State v. Galloway,* 187 N.W.2d 725, 729 (Iowa 1971) (stipulation limiting testimony at first trial regarding polygraph evidence to that of examiner whose qualification had been investigated would not permit defendant to submit evidence of another's opinion at second trial); *Mills v. Bills,* 97 Iowa 684, 66 N.W. 881 (1896) (stipulation that trial before justice of peace to be limited to one issue did not so limit appeal from justice's judgment). There is no reason to suppose that the State contemplated the admission of polygraph evidence at trial. Its mere request that defendant submit to a polygraph examination does not give rise to such an inference. *See State v. Christopher,* 149 N.J.Super. 269, 275, 373 A.2d 705, 708 (1977), *cert. denied,* 75 N.J. 24, 379 A.2d 254 (1977). It did not call as a witness at trial the police officer who commented on the polygraph test results before the grand jury. By reason of all the foregoing, we are convinced there was no stipulation by the State which would have permitted admission of the polygraph evidence at trial.

■ Defendant's second original basis for asserting that trial court erred in excluding evidence of his polygraph examination relies upon section 810.2, Supplement to the Code 1977. That new section provides:

A person arrested for or charged with an offense may request a district court judge to order a nontestimonial identification procedure. If it appears that the results of specific nontestimonial identification procedures will be of material aid in determining whether the defendant committed the offense, the judge shall order such identification procedures involving the defendant under such terms and conditions as the judge shall prescribe.

Section 810.1 of the Code lists examples of "nontestimonial identification" devices included within the definition of that term. Polygraph examinations are omitted from that list. We need not now determine the significance of that omission because defendant's reliance upon section 810.2 was misplaced for a more obvious reason.

Defendant's motion was not directed toward securing the administration upon him of an identification procedure, the matter to which section 810.2 is addressed. At the time of his motion, the polygraph test had already been given. The purpose of his motion was rather to secure admission into evidence of the test results. Section 810.2 had no bearing upon that request.

X. *Did trial court err in denying continuance when grand jury transcripts were not available for cross-examination purposes?*

■ On May 23, 1978, defendant filed a request for discovery of any and all transcripts of testimony given to the grand jury. Trial court denied that motion on June 20. However, its ruling provided that "defendant's counsel will certainly be entitled to the transcripts mentioned therein at the time that the direct examination of any witness who appeared before the Grand Jury is concluded at the time of trial, as defendant will have the right to access thereof for the purposes of cross-examination . . . ." Defendant does not dispute the validity of this ruling.

At trial, after the State examined its first witness, defendant moved for a continuance because he had not been provided with the transcript of that witness's grand jury testimony. The State responded that the transcripts were not then available; although it had ordered the transcripts, they had not been delivered by the court reporter. The State also said it would provide defendant with the police report for each police officer who testified at the conclusion of his direct examination. Trial court overruled defendant's motion "at this time," ordering the witness to stay available for the next seven days.

We are unwilling to hold that the ruling constituted error. If trial court had definitively ruled that defendant had no right to the transcripts for purposes of cross-examination throughout the remainder of trial, our position would be different. This court has previously held that, upon proper request, a criminal defendant is entitled to a transcript of the grand jury testimony of the State's witnesses before cross-exam-

ining them. *State v. Cuevas*, 282 N.W.2d 74, 82–83 (Iowa 1979); *see State v. Hall*, 235 N.W.2d 702, 715 (Iowa 1975). As such, we have been approving a procedure prescribed by the Jencks Act, 18 U.S.C. § 3500 (1976), as we have frequently done in the past in other respects as well. *See State v. Horn*, 282 N.W.2d 717, 721 (Iowa 1979).

■ However, trial court did not so rule in this case. Rather, it merely refused to delay the trial by granting a continuance at that time. By ordering the witness to remain available, it created the distinct impression that defendant would be allowed to recall the witness for additional cross-examination in case he subsequently found matters in the transcript that he wished to use for purposes of cross-examination. *See Hall*, 235 N.W.2d at 715 (approving recall procedure upon the defendant's agreement). Rulings on motions for continuances lie within the sound discretion of the trial court; such rulings are only disturbed if the trial court has abused its discretion. *E. g., State v. Jacoby*, 260 N.W.2d 828, 833 (Iowa 1977). We find no abuse of discretion in this case.

■ There is a second basis for our decision on this point. While ordinarily a defendant should not be put in a position of having to repeat his objection and ask to delay the trial in order to obtain transcripts for cross-examination, *see Hall*, 235 N.W.2d at 715, we think that an exception should be made in this case. The tentative, provisional nature of trial court's ruling clearly required defendant to notify the court if his dissatisfaction continued. *Cf. Bean v. Bickley*, 187 Iowa 689, 699, 174 N.W. 675, 680 (1919) (necessary to call matter to attention of trial court again where court had overruled evidentiary objection "for the present," until additional information was learned); *Albea v. Jackson*, 236 Ga. 690, 691, 225 S.E.2d 46, 48 (1976) (necessary to repeat evidentiary objection where ruling on objection was unclear and evidence was then submitted). *See also State v. O'Connell*, 275 N.W.2d 197, 202 (Iowa 1979) (ruling only granting or denying protection from prejudicial references to challenged

evidence does not preserve inadmissibility issue for appellate review unless ruling reaches ultimate issue and declares evidence admissible or inadmissible). Presumably defendant was supplied the police reports the State offered him. Trial court may well have assumed that defendant considered those sufficient to prepare his cross-examination of the State's witnesses. Or, it may have even assumed that the State had received the transcripts and turned them over directly to defendant. *Cf. Jones v. Parrott*, 111 Ga.App. 750, 751, 143 S.E.2d 393, 395 (1965); *Edwards v. Lacy*, 412 S.W.2d 419, 422 (Mo.1967); 4 C.J.S. *Appeal & Error* § 250 (1957) (necessary to repeat call for action of trial court if corrective action taken after objection made). On these facts, we cannot say that defendant preserved any error that might have existed.

XI. *Did trial court give an improper sentence?*

 Trial court sentenced defendant to confinement for a period of two years, the maximum period permissible for a violation of section 707.5(2). § 903.1(1), Supplement to the Code 1977. Defendant challenges this sentence on two grounds: its failure to include reasons on the record for the sentence, as required by Iowa R.Crim.P. 22(3)(d), and its inconsistency with the guidelines for selecting sentencing options, given in section 901.5.

Before we can address defendant's second ground, which is essentially an abuse of discretion argument, we must first know trial court's reasons for imposing the two-year sentence. This was recognized in *State v. Luedtke*, 279 N.W.2d 7, 8 (Iowa 1979). Accordingly, *Luedtke* held that when a trial court fails to state on the record its reasons for the sentence imposed, the sentence must be vacated and the case remanded for amplification of the record and resentencing. *Accord, State v. Pierce*, 287 N.W.2d 570, 575 (Iowa 1980).

Contrary to the State's assertion, we do not believe trial court's error in failing to state reasons for the sentence was waived by defendant's not alerting trial court to the matter. Defendant had no way of knowing before the court entered the judgment whether or not reasons would be stated in the record. *See* Iowa R.Crim.P. 22(3)(d). At that point, the litigation had terminated. As defendant had no opportunity to preserve error, we could not, in fairness, hold that he waived it. *Cf. State v. Fortier*, 20 Or.App. 613, 615–16, 533 P.2d 187, 188 (1975) (error preserved as defendant could not have anticipated that court would apply allegedly wrong standard of review until after court had rendered its decision).

◼ Consequently, we hold that the remedy announced in *Luedtke* for trial court's error in failing to state its reasons for the sentence applies here. Defendant, of course, has the right to appeal from his new sentence, if he so desires. § 814.6(1)(a), Supplement to the Code 1977.

CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.