# IN THE SUPREME COURT OF IOWA

No. 08–0513

Filed January 20, 2012

**STATE OF IOWA,**

Appellee,

vs.

**JONATHAN Q. ADAMS,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom, Judge.

On further review, defendant asserts he was denied effective assistance of counsel in his trial for homicide by vehicle. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND VACATED IN PART AND REMANDED FOR RESENTENCING.**

Alfredo G. Parrish and Andrew J. Dunn of Parrish Kruidenier Dunn Boles Gribble Parrish Gentry & Fisher, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Karen Doland (until withdrawal), Assistant Attorney General, John P. Sarcone, County Attorney, and James P. Ward, Assistant County Attorney, for appellee.

**HECHT, Justice.**

After his vehicle collided with and killed a bicyclist, the defendant was convicted of homicide by vehicle, operating while intoxicated, and leaving the scene of an accident. He appealed on several grounds, and the court of appeals concluded his convictions were supported by sufficient evidence but remanded for a sentencing correction. We granted further review to determine whether the State must prove in a prosecution under Iowa Code section 707.6A(1) (2007) that the defendant's intoxication was a proximate cause of the victim's death and, if so, whether the defendant's trial counsel was ineffective for failing to raise the issue below. We conclude the State must prove the defendant's intoxicated driving caused the victim's death to sustain a conviction for homicide by vehicle. As we conclude the record is not adequate to determine whether defendant's trial counsel was ineffective in failing to raise the causation issue, we affirm the conviction.

## I. Background Facts and Proceedings.

A reasonable fact finder could find the following facts from the testimony at trial. On the evening of December 8, 2006, Jonathan Adams attended a party at a friend's house in Des Moines. By his own admission, he consumed between three and five beers over a five-hour period and may have drunk twice that much. At about 10:45 p.m., he and an acquaintance, Sean Erickson, left the party in Adams' car with Adams driving. The right headlight on Adams' car was not functioning. As they traveled westbound on Park Avenue, Adams' car struck Tina Marie Brown, who was bicycling in the right hand lane, also heading west. Brown was propelled onto the hood of the car, and her head struck the windshield, shattering the passenger side. Her body came to rest

eighty-six feet from the initial site of impact. Brown died from her injuries.

Adams and Erickson were the only witnesses to the accident. Adams testified he was looking down at his radio when the impact occurred, and therefore he did not know what he had hit. Erickson also could not tell what they had hit. He initially thought it was a trash can, and then later told Adams he thought it might have been a bicycle. Adams did not stop to investigate but instead continued driving home. The next day, after hearing news reports about a hit and run causing Brown's death, he purchased a tarp and covered his car. After several days, he turned himself in.

In January, Adams was charged with murder by vehicle, operating while intoxicated, and leaving the scene of an accident. At trial, although he admitted drinking several beers on the night in question, he denied being intoxicated. Several witnesses who had been with Adams at the party testified specifically about whether Adams appeared to be under the influence of alcohol. Five of these witnesses testified that Adams did not appear to be under the influence of alcohol, but the sixth, who had been smoking marijuana throughout the evening, testified to the contrary. The investigating officers conceded on cross-examination that the evidence gathered from the accident scene did not tend to establish Adams was driving recklessly or at an excessive rate of speed at the time of the accident.

Adams was convicted on all three counts. He appealed, and the court of appeals concluded his convictions were supported by sufficient evidence but remanded the case for resentencing.[1] Adams sought

---

[1]On appeal, the parties agreed the trial court erred by entering judgment on both the homicide by vehicle and the OWI charges. Accordingly, the court of appeals vacated the OWI judgment and remanded for resentencing.

further review, which we granted for the determination of whether, in a prosecution for a violation of section 707.6A, the State must prove the defendant's intoxication was a proximate cause of the victim's death and whether Adams' trial counsel was ineffective for failing to challenge the sufficiency of the evidence establishing a causal connection between Adams' intoxication and Brown's death.[2]

## II. Scope of Review.

Our review of the interpretation of statutes is for correction of errors at law. *State v. Sluyter*, 763 N.W.2d 575, 579 (Iowa 2009). We review constitutional claims, however, de novo. *Collins v. State*, 588 N.W.2d 399, 401 (Iowa 1998).

## III. Discussion.

**A. The State's Burden to Prove Causation Under Section 707.6A(1).** Iowa Code section 707.6A provides:

> 1. A person commits a class "B" felony when the person unintentionally causes the death of another by operating a motor vehicle while intoxicated, as prohibited by section 321J.2.[3] . . .
>
> . . . .
>
> 2. A person commits a class "C" felony when the person unintentionally causes the death of another by any of the following means:
>
> *a.* Driving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property, in violation of section 321.277.

---

[2]Because the causation issue relates only to Adams' conviction for murder by vehicle, the court of appeals' resolution of Adams' claim of insufficient evidence to support his conviction for driving while intoxicated will stand as a final judgment in this case.

[3]Iowa Code section 321J.2 defines the offense of "operating while intoxicated" as "operat[ing] a motor vehicle . . . [w]hile under the influence of an alcoholic beverage or other drug," "[w]hile having an alcohol concentration of .08 or more," or "[w]hile any amount of a controlled substance is present in the person's blood or urine." Iowa Code § 321J.2(1).

> > *b.* Eluding or attempting to elude a pursuing law enforcement vehicle, in violation of section 321.279, if the death of the other person directly or indirectly results from the violation.

> > 3. A person commits a class "D" felony when the person unintentionally causes the death of another while drag racing, in violation of section 321.278.

> > 4. A person commits a class "D" felony when the person unintentionally causes a serious injury, as defined in section 321J.1, by any of the means described in subsection 1 or 2.

Iowa Code § 707.6A.

Adams contends the word "by" in section 707.6A(1) expresses a legislative intent that a conviction may be had under the statute only upon proof that the defendant's intoxication was the proximate cause of another's death. Adams posits that a comparison of the language of subsection (1) with subsection (3) demonstrates an intent to treat operating while intoxicated and drag racing differently. Subsection (1) addresses the unintentional death of another "*by* operating a motor vehicle while intoxicated," but subsection (3) addresses unintentionally causing the death of another "*while* drag racing." *Id.* (emphasis added). This difference, according to Adams, demonstrates the legislature knew how to distinguish between language of causation ("by") and language indicating a temporal relationship ("while").

The State, however, asserts the plain language of subsection (1) demonstrates the legislature did not intend to require a causal connection between the defendant's intoxication and the victim's death. Rather, the State contends the causal language "by" only applies to "operating a motor vehicle." Thus the death must be caused *by* the defendant's operation of a motor vehicle, and the defendant must be operating a motor vehicle *while* he is intoxicated, but the State need not

prove the victim's death was caused by the defendant's intoxication to sustain a conviction under the interpretation favored by the State. The State further contends a comparison of the language in the different subsections does not support Adams' interpretation because the operative word in both subsection (1) and subsection (3) is "while."

Because we think there is more than one plausible interpretation of the statute, we must look beyond the plain language of the statute to resolve the ambiguity. *See State v. Wiederien*, 709 N.W.2d 538, 541 (Iowa 2006). Our goal is to "ascertain and effectuate the true legislative intent." *State v. Carpenter*, 616 N.W.2d 540, 542 (Iowa 2000). We examine the language of the statute, its underlying purpose and policies, and the consequences stemming from different interpretations. *Id.* In doing so, we must construe the statute in its entirety. *Id.* "If more than one statute relating to the subject matter at issue is relevant to the inquiry, we consider all the statutes together in an effort to harmonize them." *Id.*

In determining the intent of the legislature, we will not construe the language of a statute to produce an absurd or impractical result. *Id.* "We presume the legislature intends a reasonable result when it enacts a statute." *Id.* Additionally, " 'we strictly construe criminal statutes' and resolve doubts in favor of the accused." *State v. McCullah*, 787 N.W.2d 90, 94 (Iowa 2010) (citation omitted).

Prior to the enactment of section 707.6A explicitly addressing homicide by vehicle, vehicular homicide cases were prosecuted under a manslaughter statute according to common law principles. *See State v. Rullestad*, 259 Iowa 209, 212, 143 N.W.2d 278, 280 (1966); *State v. Kellison*, 233 Iowa 1274, 1277, 11 N.W.2d 371, 373 (1943). *Kellison* and *Rullestad* both addressed the evidence required to establish a

manslaughter conviction when the defendant was accused of unintentionally killing another person by driving while intoxicated. In *Kellison*, the defendant was charged with and tried for manslaughter "by operating an automobile while intoxicated" when he struck and killed a pedestrian with his car while he was "badly intoxicated." 233 Iowa at 1275, 11 N.W.2d at 372. At the close of the State's evidence, he moved for a directed verdict, arguing the evidence did not show he drove recklessly or with wanton abandon other than that he drove while intoxicated. *Id.* at 1276, 11 N.W.2d at 372. The district court granted his motion, and the State appealed. *Id.* Reversing the district court's ruling, we held a conviction for "death of another caused by drunken driving" could be sustained without proof that the defendant drove recklessly. *Id.* at 1278, 11 N.W.2d at 373.[4]

Although Kellison did not explicitly contend the district court's directed verdict should be upheld because the State had not proven his "drunken driving" was the cause of the victim's death, we considered whether the evidence was sufficient to establish such a causal connection. *Id.* at 1279, 11 N.W.2d at 374. We determined we were "not justified in holding as a matter of law that there was no direct causal connection between defendant's drunken driving and [the victim's] death." *Id.*

Twenty years later, in *Rullestad*, the defendant did make the argument not explicitly raised by Kellison, and we concluded the State

---

[4]Kellison was tried under Iowa Code section 12919 (1939) which provided: "Any person guilty of the crime of manslaughter shall be imprisoned in the penitentiary not exceeding eight years, and fined not exceeding one thousand dollars." The court concluded the statute did not change the common law definition of involuntary manslaughter which included "the unintentional killing of a human being by another in the doing of an unlawful act not amounting to a felony or in the doing of a lawful act in an unlawful manner." *Kellison*, 233 Iowa at 1277, 11 N.W.2d at 373.

must "show a direct causal connection between defendant's drunken driving and the death." 259 Iowa at 212, 143 N.W.2d at 280. Such was the state of the law when section 707.6A was enacted in 1986 and codified in 1987. In construing statutes, we assume the legislature is familiar with the existing state of the law when it enacts new legislation. *Hines v. Ill. Cent. Gulf R.R.*, 330 N.W.2d 284, 289 (Iowa 1983). Further, "[a] statute will not be presumed to overturn long-established legal principles, unless that intention is clearly expressed or the implication to that effect is inescapable." *Id.* (citation and internal quotation marks omitted).

When section 707.6A was first codified in 1987 it provided, in relevant part:

> 1. A person commits a class "D" felony when the person unintentionally causes the death of another by either of the following means:
>
> *a.* Operating a motor vehicle while under the influence of alcohol or a drug or a combination of such substances or while having an alcohol concentration of .10 or more, in violation of section 321J.2.
>
> *b.* Driving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property, in violation of section 321.277.

Iowa Code § 707.6A (1987).

The statutory framework clearly tracked the holding in *Kellison*—"[i]nvoluntary manslaughter may be committed where death results from drunken driving *or* from wanton and reckless operaton of a vehicle." 233 Iowa at 1277, 11 N.W.2d at 373. Subsection (1) provided that a person commits a class "D" felony when he unintentionally causes the death of another by either driving while intoxicated or driving recklessly. However, the statute included no clear expression of the legislature's intent as to whether the State must prove a direct causal connection

between the defendant's intoxicated driving and the victim's death to support a conviction. In such instances of ambiguity, we rely upon the rule of construction that presumes the legislature did not intend to overturn long-established legal principles in the absence of a clear expression of an intent to do so. *Hines*, 330 N.W.2d at 289.

As the legislature has amended section 707.6A over the years, it has increased the penalty for causing a death by intoxicated driving, but the language relevant to the question of causation has not been altered.[5] We find no indication in the subsequent revisions of the statute of a legislative intent to eliminate the common law requirement that the State must prove a causal connection between the defendant's intoxicated driving and the victim's death.

The State contends that the purpose underlying the statutes (both sections 707.6A and 321J.2) supports a conclusion that the legislature intended to deter drunk driving by imposing a severe sanction on anyone who causes a death while driving under the influence of alcohol or drugs, whether the death is caused by the driver's intoxicated driving or not. The legislature certainly has a strong interest in deterring driving while intoxicated. However, driving while intoxicated has been prohibited by statute in this state since 1937. Importantly, it was prohibited at the time *Rullestad* was decided which held that proof of a causal connection between the defendant's intoxicated driving and the victim's death was required in a manslaughter prosecution. While it may be conceivable the legislature determined the hazards to the public of drunk driving was such that it justified punishing a person for homicide by vehicle without

---

[5]The relevant portion of the statute was amended in 1990 and 1997. *See* 1990 Iowa Acts ch. 1251, § 55; 1998 Iowa Acts ch. 177, §§ 26–28.

requiring a causal connection between the intoxicated driving and the death, the legislature did not express this intent.[6]

The State also urges us to interpret the statute as providing a rebuttable presumption that the defendant's intoxication was a cause of the victim's death because drunk driving is such an inherently dangerous activity. This approach, the State urges, would still allow a defendant to assert a defense based on an intervening or superseding cause of the accident. While this may indeed be a reasonable construct, it was not articulated by the legislature in section 707.6A(1), and it is not the court's role to reconfigure the statute.

We conclude it is the State's burden under section 707.6A(1) to prove a causal connection between the defendant's intoxicated driving and the victim's death. Although the statute does not impose a burden on the State to prove a specific causal connection between the defendant's *intoxication* and the victim's death, it does require proof of a factual causal connection between a specific criminal act—"intoxicated driving"—and the victim's death. Put another way, the statute demands more than mere proof that the defendant's *driving* caused the death of another person. A defendant may be found guilty of homicide by vehicle only if the jury finds beyond a reasonable doubt that his criminal act of driving under the influence of alcohol caused the victim's death.

---

[6]In *State v. Comried*, this court affirmed a conviction under section 707.6A(1)(*c*) upon evidence the defendant operated a motor vehicle while having an amount of a controlled substance in his body and caused a death. 693 N.W.2d 773, 778 (Iowa 2005). It should be noted that the issue of whether the State must, to sustain a conviction under section 707.6A(1), prove a causal connection between the defendant's intoxicated driving and the resulting death was not raised in that case and was therefore not decided by this court. Accordingly, *Comried* does not stand for the proposition that a conviction under the statute may be sustained without proof of a causal connection between the defendant's intoxicated driving and a death. Any language suggesting a contrary conclusion is dicta.

Because the nature of the State's burden to prove causation is of central importance to our analysis in this case, we shall briefly address this court's relevant precedents addressing the subject. We have noted that both factual and legal, or proximate, cause may come into play in criminal cases just as in civil tort cases. *State v. Marti*, 290 N.W.2d 570, 584–85 (Iowa 1980). Suggesting "proximate cause" concepts were much the same in civil and criminal cases, we concluded instructions defining proximate cause in civil trials may be appropriate for use in criminal trials. *Id.* at 584. We continued the analogy between civil and criminal cases for purposes of the separate factual and legal aspects of causation by observing that proximate cause is established in a criminal case if the defendant's conduct "is a 'substantial factor' in bringing about the harm and . . . there is no other rule of law relieving the defendant of liability because of the manner in which her conduct resulted in the harm." *State v. Hubka*, 480 N.W.2d 867, 869 (Iowa 1992). Recently, in a case in which a defendant asserted the act of a third party intervened and relieved him of criminal responsibility, we stated:

> "[I]n the context of a homicide case, [a] 'proximate cause' is a cause which, in a natural and continuous sequence and unbroken by any new and independent cause, produces the injury, without which the injury would not have occurred and from which a person of ordinary prudence could have reasonably foreseen that such a result, or a similar injurious result, was probable under the facts as they existed."

*State v. Dalton*, 674 N.W.2d 111, 118 (Iowa 2004) (citation omitted).

However, in our most recent discussion of causation principles in a criminal case, we clarified that when "causation does surface as an issue in a criminal case, our law normally requires us to consider if the criminal act was a factual cause of the harm." *State v. Tribble*, 790 N.W.2d 121, 126–27 (Iowa 2010). Except where multiple acts contribute

to cause a consequence, the determination of factual causation turns simply on whether " 'the harm would not have occurred absent the [defendant's] conduct.' " *Id.* at 127 (quoting Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 26, at 346 (2010)).[7]

Our review of this case leads us to conclude that this is just such a "normal" case in which "our law . . . requires us to consider if the criminal act was a factual cause of the harm." *Id.* at 126–27. As our decision in this case makes clear, the causation question in a prosecution under Iowa Code section 707.6A(1) asks whether the victim's death would have occurred in the absence of the defendant's criminal act—intoxicated driving.

**B. Ineffective Assistance of Counsel.** The State contends error has not been preserved on the issue of whether in a prosecution for homicide by vehicle under section 707.6A(1) the State must establish the defendant's intoxicated driving was the cause of the victim's death. Adams concedes the issue was not raised before the district court, but he argues his trial counsel was ineffective for failing to request a jury instruction on causation and properly raise the State's proof of causation.

If the defendant has reasonable grounds to believe the record is adequate for the court to address the issue, the defendant may raise a

---

[7]As we understand his argument, Adams contends his trial counsel was ineffective in failing to challenge the State's proof of a causal (factual) connection between his criminal act and the victim's death, and in failing to challenge the district court's jury instruction addressing the State's burden of proof of factual causation. We therefore do not address today whether the "legal cause" aspect of the former proximate cause doctrine has any continuing viability in criminal cases after our decision in *Thompson v. Kaczinski*, 774 N.W.2d 829, 839 (Iowa 2009) (adopting the Restatement (Third) of Torts formulation of causation for civil cases and substituting the "scope of liability" inquiry for the former concepts of "proximate cause" and "legal cause"); s*ee also State v. Hubka*, 480 N.W.2d 867, 869 (Iowa 1992) (concluding the contributory negligence of a homicide victim will not constitute a legal cause allowing a defendant to escape criminal responsibility for homicide).

claim of ineffective assistance of counsel on direct appeal. Iowa Code § 814.7(2) (2007). If we determine the record is adequate, we may resolve the claim. *Id.* § 814.7(3). If we conclude the record is insufficient for appellate review, we may preserve it for postconviction proceedings. *Id.* The elements of a claim of ineffective assistance of counsel are well-established. To prevail on his claim, Adams must prove by a preponderance of the evidence that "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006); *see also Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674, 693 (1984). To meet the first prong, " 'counsel's performance is measured against the standard of a reasonably competent practitioner with the presumption that the attorney performed his duties in a competent manner.' " *Dalton*, 674 N.W.2d at 119 (citation omitted). To satisfy the prejudice prong, Adams must show " 'there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.' " *Id.* (citation omitted).

This court has previously held that to sustain a conviction for "manslaughter by drunken driving" it is necessary to show a direct causal connection between defendant's drunken driving and a decedent's death. *Rullestad*, 259 Iowa at 212, 143 N.W.2d at 280; *see also State v. Wullner*, 401 N.W.2d 214, 219 (Iowa Ct. App. 1986) ("In order to sustain an involuntary manslaughter conviction based upon the public offense of drunk driving, it is necessary to show a direct causal connection between the drunk driving and the death."). More recently, the court of appeals has concluded proof of such a causal connection is required for a conviction under section 707.6A(1)(*a*). *See State v. Wieskamp*, 490 N.W.2d 566, 567 (Iowa Ct. App. 1992) ("[A] sober driver driving with

reasonable care would have struck the victim . . . . Therefore Wieskamp's intoxicated driving was not a substantial factor in causing the victim's death. We dismiss the vehicular homicide charge. . . ."). However, Adams' trial counsel failed to challenge the State's proof of a causal connection between Adams' criminal act of intoxicated driving and Brown's death.[8]

We conclude the record is inadequate, however, to permit us to resolve Adams' ineffective assistance of counsel claim on direct appeal. First, we note the defense interposed by Adams' counsel in the district court was based solely on the proposition that the State failed to prove Adams was operating a vehicle while under the influence of alcohol at the time of the crash. A defense challenging the State's proof of a causal connection between Adams' alleged intoxicated driving and Brown's death was not presented at trial.[9] Trial counsel has not been permitted

---

[8]Instruction number 22, the marshalling instruction for the homicide by vehicle charge against Adams, allocated to the State the burden to prove:

1. On or about the 18th day of December 2006, the Defendant operated a motor vehicle while under the influence of alcohol.

2. The Defendant's actions unintentionally caused the death of Tina Marie Brown.

The language utilized by the district court in this instruction for the second element of the charge did not conform to the Iowa State Bar Association's Criminal Jury Instruction number 710.1 which would expressly require proof that the defendant's act or acts set out in element 1 (the criminal act of intoxicated driving) caused a death. As our opinion in this case makes clear, proof of a causal connection between the criminal act and the death is required in prosecutions under section 707.6A(1). Accordingly, we urge district courts to use the uniform instruction in cases of this type.

[9]Although we conclude we are unable on direct appeal to decide as a matter of law whether Adams' trial counsel breached a duty in failing to raise the causation issue, we note the record does tend to prove Brown was wearing dark clothing while bicycling on a highly traveled city street late at night in December at the time of the crash. The right headlight of Adams' car was not functioning. Under these circumstances, we think a rational fact finder could have found Adams' alleged intoxicated driving was not the factual cause of Brown's death because a driver who had not ingested alcohol before the crash would have struck the victim under the circumstances.

an opportunity to explain whether a causation defense was considered, and if it was considered, whether there were plausible strategic reasons for not pursuing it.

We therefore affirm Adams' conviction for murder by vehicle and leave his claim of ineffective assistance of counsel for possible postconviction proceedings.

**IV. Conclusion.**

We affirm Adams' conviction for homicide by vehicle and affirm the court of appeals' resolution of Adams' claim of insufficient evidence to support his conviction for driving while intoxicated. We also affirm the court of appeals resolution of Adams' sentencing challenge and vacate the OWI judgment, and remand to the district court for resentencing.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND VACATED IN PART AND REMANDED FOR RESENTENCING.**

All justices concur except Waterman, J., who concurs specially and Mansfield, J., who takes no part.

**WATERMAN, Justice (concurring specially).**

I specially concur. I join the majority in affirming Adams' conviction for vehicular homicide and in rejecting Adams' claim the State must separately prove the driver's intoxication (as opposed to driving *while* intoxicated) caused the death for a conviction under Iowa Code section 707.6A(1) (2007). I also agree with the majority's conclusion that the Iowa State Bar Association (ISBA) Criminal Jury Instruction 710.1 correctly states the law and should be given in vehicular homicide (intoxication) cases of this type. I write separately to elaborate on my reasons.

The text of the statute does not require a separate finding Adams' intoxication caused the death. Our task is to interpret the statute as written:

> A person commits a class "B" felony when the person unintentionally causes the death of another by operating a motor vehicle while intoxicated, as prohibited by section 321J.2.

Iowa Code § 707.6A(1). The fighting issue is framed by a decision of the Indiana Supreme Court construing equivalent statutory language[10] to hold causation is proven by showing "the driver ran into the victim." *Micinski v. State*, 487 N.E.2d 150, 154 (Ind. 1986). The court reasoned, "We find nothing in the statute to indicate the General Assembly intended to require that the State prove a causal link between the driver's intoxication and the fact the injury resulted from his driving." *Id.*

---

[10]Ind. Code § 9–4–1–54(b)(2) (1982) ("A person who operates a vehicle while intoxicated commits a Class A misdemeanor. However, the offense is a Class C felony if it results in the death of another person and is a Class D felony if the offense results in serious bodily injury (as defined by IC 35–41–1–2), other than death, to another person.").

The *Micinski* court rejected the argument that the jury should be asked, " 'Is it the driver's intoxication that caused him to hit the victim?' " *Id.* The court concluded that this was not what the legislature intended. Rather, the focus should be "on the driver's acts and not on speculation about whether he could have stopped if he had been sober. If the driver's conduct caused the injury, he commits the crime." *Id.* As I explain below, application of our own rules of statutory interpretation leads to the same conclusion here.

The ISBA criminal jury instruction on vehicular homicide (intoxication) correctly applies the statutory elements of the offense.[11] The majority faults the district court for rephrasing the second element to replace "defendant's act or acts set out in Element 1" with simply, "defendant's actions" in the instruction given at trial. I think it is clear in context that the actions referenced in the instruction given were Adams' operation of his vehicle while intoxicated. The revision was immaterial, and the instruction given was not erroneous.

---

[11]ISBA Criminal Jury Instruction No. 710.1 provides:

**710.1 Homicide By Vehicle (Intoxication) - Elements.** The State must prove both of the following elements of Homicide By Vehicle:

1. On or about the _____ day of _____, 20___, the defendant:

a. operated a motor vehicle while under the influence of alcohol or a drug or a combination of such substances; or

b. operated a motor vehicle while having an alcohol concentration of [.08] or more, or

c. operated a motor vehicle while any amount of a controlled substance was present, as measured in the defendant's blood or urine.

2. The defendant's act or acts set out in Element 1 unintentionally caused the death of (victim).

If the State has proved both of the elements, the defendant is guilty of Homicide by Vehicle. If the State has failed to prove either of the elements, the defendant is not guilty of Homicide by Vehicle (and you will then consider the charge of _____ as explained in Instruction No.____).

The legislature chose to impose greater criminal penalties on people who cause fatal accidents while driving drunk, based on the common knowledge that alcohol impairs judgment, motor skills, perception, and reaction times. It is safe to assume that alcohol is a contributing factor in most accidents involving drunk drivers, which is why the legislature's policy choice makes sense. But, the legislature stopped short of requiring the jury to separately find the intoxication itself caused the accident. Adams' trial counsel therefore lacked a valid objection to the instruction.

To provide context to explain why the jury was properly instructed, it is worth reviewing the facts supporting the jury verdict.

**A. Facts Supporting the Jury Verdict.** Tragedy results when a drunk driver and bicyclist meet on the road. The accident occurred shortly before 11 p.m., Friday, December 8, 2006, after an evening that Adams spent with his friend, Sean Erickson, drinking at a bring-your-own beer party in Des Moines. Adams drove because Erickson's license was suspended from a prior drunk-driving conviction. They bought beer at a local gas station; Adams picked up a twelve-pack of Budweiser cans and Erickson purchased a twenty-pack of Budweiser bottles. They arrived at the party between 5:30 p.m. and 5:45 p.m. and began drinking their beer. When they departed about five hours later, they had four cans and two bottles left, twenty-six fewer twelve-ounce beers than they brought. Another partygoer drank a thirty-pack of Busch Light during the party. A witness, Matthew Montgomery, testified Adams and Erickson appeared intoxicated at the party. Montgomery himself smoked marijuana throughout the party. Adams testified he sipped three to four cans of beer and opened a bottle of Budweiser, but admitted he may have consumed twice that many. Adams denied he was under the influence

when he left the party and asserted others drank some of his beer. Erickson testified he got "pretty drunk" at the party and told his cousin later that both he and Adams were intoxicated. Other partygoers testified Adams was "aggressive" and "arrogant" at the party. Montgomery described Adams as "a little unsteady on his feet" and that [h]is speech seemed to be a little bit slurred." Another guest testified Adams was "loud and obnoxious," and "the entire time [she] saw him he had a can of beer or a bottle of beer in his hand." Montgomery also testified Adams rocked back and forth, wobbled at the party, and appeared too intoxicated to drive home.

Adams and Erickson left together in Adams' Monte Carlo about 10:45 p.m. They stashed in the backseat the six beers remaining from the thirty-two full beers they brought to the party. The right front headlight was not functioning. Adams was driving west on Park Avenue when Brown was bicycling in the same direction on that road in the right lane near the curb. Adams testified he looked down to change the satellite radio station when his car hit something that slammed into the windshield and the windshield collapsed into the front seat. Adams kept driving. Erickson said, "Dude, we just hit something." Adams replied, "No f------ s---, Sean, what was it . . . what the f--- was that?" A block later, when questioned by Erickson, Adams exclaimed, "Shut the f--- up and let me think for a minute." They drove home and never reported the accident. A passerby found Brown's body around 11 p.m., and Brown was pronounced dead at the scene. She had a fractured skull. The court of appeals affirmed Adams' conviction for vehicular homicide and noted:

> It is difficult to describe in a judicial opinion the impression conveyed by the post-accident photographs of Adams' vehicle. The windshield, where Brown's head and body hit

the car, was smashed in, shattered, and collapsed into the front passenger seat. Yet Adams claimed not to have realized that he had hit someone.

This is powerful evidence of intoxication. Any person in possession of his faculties would have realized he had hit someone. The jury could infer Adams was intoxicated simply by his denial that he knew he hit the victim and continued driving.

The verdict was also supported by expert medical testimony. Polk County Medical Examiner, Gregory Schmunk, testified intoxication reduces visual acuity and impairs perception:

> You don't see things as well as you would normally when you were sober. Either you physically are not seeing them if you're at a fairly high level of intoxication, or you're just not paying attention to what your visual cues are. . . . [Y]ou may be looking directly at someone, but you're paying no attention to them because your mind . . . or your thinking functions are affected.
>
> . . . .
>
> . . . You may see something but not perceive it. You're not paying attention.

When Adams heard news reports of Brown's fatal hit-and-run death, he bought a tarp to cover his Monte Carlo. He turned himself in two days later, too late for any chemical test to determine his blood alcohol level at the time of the accident. Adams' conduct in fleeing the scene showed impaired judgment and consciousness of guilt. The court of appeals concluded sufficient evidence supported Adams' convictions for vehicular homicide (intoxication), operating a motor vehicle while intoxicated (OWI), and leaving the scene of an accident.

The majority correctly allows the decision of the court of appeals to stand as the final judgment that the evidence was sufficient to convict Adams of vehicular homicide while intoxicated.

**B. Interpretation of Iowa Code Section 707.6A(1).** The majority correctly rejects Adams' belated argument that the statute requires proof his intoxication caused Brown's death. Application of our well-settled principles of statutory interpretation shows the proof required is simply that the defendant's act of driving while intoxicated caused the death.

"The polestar of statutory interpretation is the intent of the legislature." *State v. Carpenter*, 616 N.W.2d 540, 542 (Iowa 2000). In *State v. Comried*, we reiterated the principles of interpretation most pertinent to construing section 707.6A(1):

> "When we interpret a statute, we attempt to give effect to the general assembly's intent in enacting the law. Generally, this intent is gleaned from the language of the statute. To ascertain the meaning of the statutory language, we consider the context of the provision at issue and strive to interpret it in a manner consistent with the statute as an integrated whole. Similarly, we interpret a statute consistently with other statutes concerning the same or a related subject. Finally, statutes are interpreted in a manner to avoid absurd results and to avoid rendering any part of the enactment superfluous."
>
> Also, "[i]n construing a statute denouncing the offense of driving while under the influence of intoxicants, the manifest purpose of the statute may not be ignored. Although such a statute is a penal statute and must be strictly construed, such a statute, since it is designed to protect the public, should be liberally or reasonably construed in order to effect its purpose to protect, as far as may be, every person lawfully on the highway, and to reduce the hazard of prohibited operation of a motor vehicle to a minimum."

693 N.W.2d 773, 775 (Iowa 2005) (quoting *State v. Pickett*, 671 N.W.2d 866, 870 (Iowa 2003) (first quotation); 61A C.J.S. *Motor Vehicles* § 1385, at 274 (2002) (second quotation)).

A conviction for vehicular homicide under 707.6A(1) rests on a predicate offense of operating a motor vehicle in violation of Iowa Code section 321J.2. In *Comried*, we noted "the purpose of chapter 321J is 'to

reduce the holocaust on our highways[,] part of which is due to the driver who imbibes too freely of intoxicating liquor.' " *Id.* (quoting *State v. Kelly*, 430 N.W.2d 427, 429 (Iowa 1988)); *see also State v. Garcia*, 756 N.W.2d 216, 220 (Iowa 2008) (observing the purpose underlying Iowa Code section 321J is " 'to help reduce the appalling number of highway deaths resulting in part at least from intoxicated drivers.' " (quoting *State v. Wallin*, 195 N.W.2d 95, 96 (Iowa 1972))).

The majority correctly rejects Adams' effort to add a proof requirement not found in the statute—that his *intoxication* proximately caused Brown's death, as opposed to simply his act of driving *while* intoxicated. As the Wisconsin Supreme Court aptly observed, it is impossible and unnecessary to separate the intoxication from the act of driving:

> The legislature has determined that combining the operation of a motor vehicle with being in an intoxicated state is conduct which is *malum prohibitum* and is pervasively antisocial. . . . The commission of the offense does not require any erratic or negligent driving. Because driving under the influence of an intoxicant is *malum prohibitum* it is impossible to separate the intoxication from the driving or the driving from the intoxication. . . .
>
> . . . The statute does not include as an element of the crime a direct causal connection between the fact of defendant's intoxication, conceptualized as an isolated act, and the victim's death. Under this statute there is an inherently dangerous activity in which it is reasonably foreseeable that driving while intoxicated may result in the death of an individual. The legislature has determined this activity so inherently dangerous that proof of it need not require causal connection between the defendant's intoxication and the death.

*State v. Caibaiosai*, 363 N.W.2d 574, 577–78 (Wis. 1985); *see also People v. Martin*, 640 N.E.2d 638, 646 (Ill. App. Ct. 1994) ("[I]n the case of a defendant convicted of DUI [driving under the influence], the law holds him accountable for precisely those harms actually risked by his

conduct—namely, that he might seriously injure pedestrians on or next to the roadway, or that he might crash his vehicle into other vehicles on the roadway, seriously injuring their occupants.").

The State correctly observes section 707.6A(1) imposes a presumption the driver's intoxication proximately caused the accident. This conclusion is reinforced by the statute's imposition of liability for even trace amounts of controlled substances. *See Comried*, 693 N.W.2d at 775–76, 778 (construing sections 321J.2(1)(*c*) and 707.6A(1)). A driver with only a trace amount of methamphetamine in his blood may, in fact, be unimpaired, yet if he gets in a fatal accident, he can be found guilty of vehicular homicide. *Id.* at 778. The *Comried* court observed:

> The legislature could reasonably have imposed such a ban because the effects of drugs, as contrasted to the effects of alcohol, can vary greatly among those who use them. One court has observed that,
>
> > since the manufacture and distribution of illicit drugs are unregulated and because the drugs' potency varies, the effects are unpredictable. Therefore, . . . there is no level of use above which people can be presumed impaired or below which they can be presumed unimpaired.

*Id.* at 776 (quoting *State v. Phillips*, 873 P.2d 706, 708 (Ariz. Ct. App. 1994)). We recognized section 321J.2(1)(*c*) prohibits "people from operating motor vehicles with controlled substances in their bodies, whether or not they are under the influence." *Id.* We affirmed Comried's conviction under section 707.6A(1) because he was in a fatal accident while he had a detectable amount of methamphetamine in his blood. *Id.* at 778 (" '[A]ny amount' means any amount greater than zero."). Obviously, the jury, to convict, did not separately find that the trace amount of methamphetamine caused Comried's fatal accident. A trace amount is unlikely to cause an accident. If a trace amount of a drug can

support a conviction, it is nonsensical to require proof the alcohol an intoxicated driver consumed caused the accident. *Comried* was decided unanimously a mere seven years ago. Stare decisis is yet another compelling reason to reject Adams' interpretation.

Because the effects of alcohol are better known, the legislature requires proof the defendant was driving "while intoxicated." Iowa Code § 707.6A(1). Intoxication is presumed at a blood alcohol level of .08. *Id.* § 321J.2(1)(*b*). But, proof of intoxication supports a conviction without a separate finding the intoxicant caused the accident. The legislature intentionally stopped short of requiring proof that the alcohol intoxication, or the consumption of any amount of illicit drugs, actually caused the fatal accident. It did so to avoid the difficulties of proof separating intoxication from driving that the Wisconsin Supreme Court noted in *Caibaiosai.* 363 N.W.2d at 577–78. This is not unusual in criminal law. For example, armed robbery requires a robbery that occurred while the defendant was armed. Iowa Code § 711.2. The State need not prove the weapon was necessary to accomplish the robbery.

Our legislature knows how to draft vehicular homicide penal statutes that require the jury to specifically find the predicate driving violation proximately caused the death. The eluding provision, section 707.6A(2)(*b*), for example, criminalizes "caus[ing] the death of another by . . . [e]luding or attempting to elude a pursuing law enforcement vehicle . . . *if the death of the other person directly or indirectly results from the violation.*" (Emphasis added.) That italicized language was not included in section 707.6A(1) or (3) which govern fatal accidents that happen when the defendant is driving "while" intoxicated or drag racing.[12] This

---

[12]"A person commits a class 'D' felony when the person unintentionally causes the death of another *while* drag racing, in violation of section 321.278." Iowa Code § 707.6A(3) (emphasis added).

is because drag racing and driving while intoxicated are both inherently dangerous. "[L]egislative intent is expressed by the omission as well as by [the] inclusion of statutory terms." *See Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 193 (Iowa 2011) (citation and internal quotation marks omitted); *State v. Beach*, 630 N.W.2d 598, 600 (Iowa 2001). If the legislature had intended to require proof the defendant's intoxication caused the victim's death, it would have added conditional language to section 707.6A(1), such as it included in section 707.6A(2)(*b*). Adams asks us to effectively rewrite the statute to add such a requirement the legislature chose to omit.

The Dram Shop Act provides an example where the legislature clearly conditioned liability on a finding the driver's intoxication proximately caused the victim's harm. Iowa Code section 123.92 gives victims of drunk drivers a statutory right to sue the licensed vendor who sold alcoholic beverages to a person the seller knew or should have known was intoxicated or would become intoxicated. Iowa Code § 123.92. However, the legislature expressly provided the following affirmative defense: "If the injury was caused by an intoxicated person, a permittee or licensee may establish as an affirmative defense that the intoxication did not contribute to the injurious action of the person." Iowa Code § 123.92. The legislature provided no such affirmative defense to a charge of vehicular homicide while intoxicated. *See id.* § 707.6A(1). It is not our role to create such a defense, much less impose another element of the offense the State must prove beyond a reasonable doubt.

In the rare case in which the evidence clearly establishes alcohol is not a factor because a sober driver would have struck the victim under the same circumstances, Iowa law recognizes a defense based on sole

proximate cause or superseding cause. *See State v. Hubka*, 480 N.W.2d 867, 869 (Iowa 1992) ("[T]he defendant may be relieved of criminal responsibility if a court finds that the intervening events are such as to break the chain of causal connection between the defendant's conduct and the victim's death."); *see also Micinski*, 487 N.E.2d at 154 ("This is not to say that a drunk driver who hits a child who has run out from between two parked cars is not entitled to ask a jury to find him not guilty because there is reasonable doubt whether he caused the collision."); *State v. Rivas*, 896 P.2d 57, 62 (Wash. 1995) ("[A]n intoxicated defendant may still avoid responsibility for a death which results from his or her driving if the death is caused by a superseding, intervening event.").

In *Hubka*, our court affirmed the defendant's conviction for vehicular homicide under section 707.6A(1), rejecting the argument that the sole proximate cause of the victim children's death was the failure to use proper child seat restraints. 480 N.W.2d at 870. In *State v. Wieskamp*, our court of appeals reversed a conviction for vehicular homicide because "as a matter of law . . . a sober person driving with reasonable care would have struck and killed the victim." 490 N.W.2d 566, 567 (Iowa Ct. App. 1992). In *Wieskamp*, an intoxicated driver ran over the victim who was "lying in the street covered solely in dark clothing in an unlighted area of the highway." *Id.* The *Wieskamp* court emphasized there was "no evidence in the record to dispute Sgt. Sellars' opinion testimony that a sober person would not have seen the victim 'until they were right on top of them.'" *Id.* By contrast, the record here includes expert testimony that Adams' intoxication would have impaired his night vision and perception. It was for the jury to decide whether Adams' act of driving while intoxicated caused the accident.

Our interpretation of the statute is consistent with *State v. Rullestad.* 259 Iowa 209, 143 N.W.2d 278 (1966). That case predated the codification of section 707.6A(1) in 1986. 1986 Iowa Acts ch. 1220, § 41. The *Rullestad* court stated that "it is necessary to show a direct causal connection between defendant's drunken driving and the death." *Id.* at 212, 143 N.W.2d at 280. The *Rullestad* court, however, did not attempt to separate out the defendant's intoxication as a cause of the death, apart from the defendant's act of driving while intoxicated. *Id.* Proof for a conviction under *Rullestad* is the same as proof for conviction under section 707.6A(1)—the jury must find the defendant's act of operating a motor vehicle *while* intoxicated caused the death, not that the intoxication itself was a cause.

Other courts construing equivalent statutory language have expressly rejected arguments the State must prove the intoxication was a proximate cause of the victim's death. *See, e.g., State v. Benoit*, 650 A.2d 1230, 1233 (R.I. 1994) ("We do, however, agree with the state's contention that the statute does not require the *intoxication* of the defendant to be a proximate cause of the death . . . . Therefore, all the state need prove is that the defendant's operation of his or her motor vehicle was a proximate cause of the death in question occurring while the defendant was legally intoxicated.");[13] *see also People v. Garner*, 781 P.2d 87, 89 (Colo. 1989) ("The statute does not require evidence that the intoxication affected the driver's operation in a manner that results in a collision. The clear intent of the legislature is to punish and thereby to

---

[13]R.I. Gen. Laws § 31-27-2.2(a) (1982) ("When the death of any person other than the operator ensues as a proximate result of an injury received by the operation of any vehicle, the operator of which is under the influence of any intoxicating liquor . . ., the person so operating such vehicle shall be guilty of 'driving under the influence of liquor or drugs, resulting in death.' ").

deter the conduct of voluntarily driving while intoxicated.");[14] *Magaw v. State,* 537 So. 2d 564, 566–67 (Fla. 1989) ("This legislation requires a causal connection between the driver's conduct (the operation of a motor vehicle) and the resulting accident. . . . Moreover, the state is not required to prove that the operator's drinking caused the accident.");[15] *Micinski,* 487 N.E.2d at 154; *Rivas,* 896 P.2d at 61 (approving a jury instruction comment stating the amended statute modified existing caselaw "by changing the causal connection . . . between the defendant's intoxicated condition and the victim's death to a causal connection between the defendant's operation of a motor vehicle and the victim's death");[16] *Caibaiosai,* 363 N.W.2d at 577–78.[17] These cases are persuasive authority contrary to Adams' proffered interpretation of section 707.6A(1).

For these additional reasons, I concur with the majority opinion.

---

[14]Colo. Rev. Stat. § 18–3–106(1)(b)(I) (1986) ("If a person operates or drives a motor vehicle while under the influence of any drug or intoxicant and such conduct is the proximate cause of the death of another, he commits vehicular homicide. This is a strict liability crime.").

[15]Fla. Stat. § 316.193(1) (Supp. 1986) (defining "driving under the influence" as occurring only when "[t]he person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that his normal faculties are impaired").

[16]Wash. Rev. Code § 46.61.520 (1991) ("When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle: (a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502 . . . .").

[17]Wis. Stat. § 940.09(1)(a) (1984) (stating a person commits a Class D felony who "(1) causes the death of another, (2) by the operation of a vehicle, (3) while under the influence of an intoxicant").