STATE OF IOWA, Appellee, v. FRED MEYER, Appellant.

CRIMINAL LAW: Evidence—Opinion Evidence—Effect of Gun-
1  shot Wounds. A witness must not be permitted to testify to the
relative effects of gunshot wounds on alleged suicides and on
one alleged to be a nonsuicide *unless similarity of conditions is
first shown;* i. e., similarity of weapon, kind and quantity of ex-
plosive, distance of weapon from body, etc.

CRIMINAL LAW: Evidence—Suicidal Tendency. Evidence tend-
2  ing to show suicide opens the door to nonremote evidence tend-
ing to show (and for no other purpose) a predisposition toward
self-destruction; i. e., despondency, melancholy and depression
on the part of deceased.

CRIMINAL LAW: Evidence—Nonconclusive Character—Relation
3  of Parties. Unpleasant relations existing between defendant
and the deceased may be shown, though the testimony bearing
thereon may be far from persuasive. So held where the State
was permitted to show some slight trouble between the deceased
and her husband (the defendant) relative to the defendant's
visits at "beer" parties.

CRIMINAL LAW: Evidence—Suicides—Percentage of Nonfeloni-
4  ous Homicides. Evidence of the percentage of suicidal and acci-
dental homicides has no bearing whatever on whether a partic-
ular homicide was either, or whether it was or was not feloni-
ous.

CRIMINAL LAW: Evidence—Remoteness—Possession of Weapon.
5  Evidence that defendant, 15 months prior to the homicide in
question, had in his possession a weapon different from that
found with deceased at the time her dead body was discovered,
is too remote for admissibility.

CRIMINAL LAW: Evidence—Relevancy—Drinking Habits of De-
6  fendant. Evidence that defendant, on the evening preceding
the day on which deceased was killed, had, to some undefinable
extent, "been drinking," is wholly irrelevant.

HOMICIDE: Trial—Aiding and Abetting—Nonapplicable Instruc-
7  tions. Instructions authorizing a conviction for homicide
by "aiding and abetting" the actual killing by another is revers-

ible error when the record is bare of any evidence of such aiding and abetting.

CRIMINAL LAW: Appeal—Decisions Reviewable—Constitutional Questions—Absence of Exceptions. Constitutional questions not raised and preserved in the trial court will not be reviewed on appeal.

CRIMINAL LAW: Trial—Instructions—Uxoricide—Presumption of Innocence. Under a charge of uxoricide, defendant is not entitled, *as a matter of law*, to an instruction that the ordinary presumption of innocence is strengthened by reason of the marital relation.

CRIMINAL LAW: Motive—Nonessential Element of Crime. Proof of motive is not absolutely essential to conviction for crime.

*Appeal from Madison District Court.*—LORIN N. HAYS, Judge.

MONDAY, JUNE 18, 1917.

THE defendant was convicted of murder in the second degree and sentenced accordingly. He appeals.—*Reversed and remanded.*

*John A. Guiher* and *W. S. Cooper*, for appellant.

*George Cosson*, Attorney General, *John Fletcher*, Assistant Attorney General, and *Phil R. Wilkinson*, for appellee.

LADD, J.—The defendant was married to Ethel Clayton in February, 1915, and she died from a gunshot wound July 25th of the same year. At the time, defendant and his mother only were on the premises, a farm about 7 miles from Van Meter. The defendant testified before the coroner's jury, as was proven, that, at about 6 o'clock in the morning in question, he arose and did his chores, returning to the house with the milk at about 7 or 7:30 o'clock, and, with his mother, strained the milk and ate breakfast. He then asked his wife, who was upstairs, if she wanted breakfast, and, as she did not care for any, went back to

bed and slept until about 11 o'clock. Upon waking, his wife suggested that they go to a neighbor's for the day, and, having so agreed, he dressed and went out to harness the team, his wife being engaged in dressing her hair as he left. Having put the harness on, he proceeded to bridle one of the horses, when his mother called him to see what had happened upstairs. When both went up, they saw his wife lying near the window at the head of the bed, head over the window sill, and hair down. This was in the south bedroom of the second story. A bullet had entered the forehead, three fourths of an inch to an inch above the bony arch of the right eye, and it and two fragments of lead were subsequently extracted from the brain. A 38-caliber revolver was lying on the floor with one chamber empty, and a 32-caliber revolver was in the bureau drawer. The blood was still flowing and brain matter oozing out when a physician reached the house. The theory of the State was that defendant had shot his wife with a revolver other than the one on the floor, or his mother had done so, and he was accessory before the fact; while that of the defense was that death resulted from suicide or accident. As the judgment must be reversed, details need not be recited, other than to say that no motive whatever was shown, not even previous ill feeling on the part of either mother or son toward the wife, who was about 5 months advanced in pregnancy and was somewhat afflicted with skin diseases known as lichen and impetigo. 22 errors are assigned, but of these, only such as involve doubtful rulings will be reviewed, the others being approved without specific reference thereto.

I. One Fisher, who had had 12 or 13 years' experience as undertaker, prepared the body for burial, and, after describing its appearance, and saying that the wound was surrounded by a dark circle which he first thought powder burn, but which the embalming fluid caused to disappear,

1. CRIMINAL LAW: evidence: opinion evidence: effect of gunshot wounds.

testified that "the skull did not seem to be shattered," and was then asked if he ever had any experience in taking care of a body in case of suicide, and answered: "Two or three. Q. You may state to the jury what difference you observed in those cases of suicide—those which were proved to be suicide—and the case of Ethel Meyer." An objection as incompetent, immaterial and irrelevant, "and for further reason that the conditions under which the wound had been inflicted had not been shown to be the same, and the witness should describe the condition and appearance of the wound and let the jury make comparison," was overruled, and he answered, "I do not know as I know any difference. Q. State, Mr. Fisher, whether or not you observed a difference in the shattering of the skull in cases of suicide that you observed and in the case of Ethel Meyer. (Objection as immaterial was overruled.) A. In cases that I have known of that were suicide, the gun was held so close that it pulled the skin loose from the bone, loosened it up, and the wound is larger. (Thereupon, the defendant asked that the answer be stricken, on the ground that the conditions under which the wounds were inflicted were not shown to have been the same, nor were the weapons shown to have been alike. The motion was overruled.) Q. In these cases of suicide, Mr. Fisher, was there any difference in the shattering of the skull than there was in the case of Ethel Meyer? (The same objection was overruled.) A. Well, I think there would be a difference; the skull would shatter more."

The witness explained on cross-examination that the wound on the body of one suicide had been inflicted with a shotgun, another committed suicide with a 32-caliber revolver, the shot having entered the right temple at a place where the bone structure is lighter than that above the eye, and the other body was merely supposed to have been that of a suicide, and the wound supposed to have been inflicted in the right temple with a 38-caliber revolver, and that he

knew nothing as to the distance the guns were from the heads of these men when discharged, and further, that he understood that some revolvers of the same make and caliber shot with greater force than others; but said that he was not informed as to whether the kind or amount. of powder in the cartridge made a difference, or the kind of bullet or its shape or the length of the barrel, but supposed these would have some effect.

There was manifest error in permitting this witness to make the comparisons, without showing of similarity of conditions, and, had objection been interposed, in permitting him to testify as an expert. He was not shown to have information as to the relative effects of bullets striking the skull when discharged close to the head and from some distance, and the objections to the questions calling for testimony as to relative condition of the skull, as well as the motion to strike, should have been sustained.

2. CRIMINAL LAW:
   evidence: sui-
   cidal tendency.

II. The court struck out, on motions, evidence of declarations of the deceased concerning her physical condition, and complaint of these rulings is made. In each instance, the witnesses were afterwards permitted to state fully what she had said, in so far as tending to show despondence, melancholy or depression—a condition of mind likely to exist in one contemplating self-destruction. Ordinarily, testimony of what the alleged victim of murder may have said, save when part of the *res gestae,* is regarded as hearsay; but, when evidence adduced tends to show that the homicide may have been suicidal, the condition of deceased's mind is somewhat in issue, and evidence tending to prove a predisposition toward self-destruction is admissible. Such predisposition may be shown by acts or declarations of the deceased within such reasonable time before the killing as that there may have been some tendency to establish such a condition of mind when this happened. Such declarations are in the

nature of verbal acts and have a direct bearing, as indica-
tive of the condition of the mind. Of course, consideration
of evidence of what may have been said by deceased should
be limited to this purpose, and the jury warned that such
declarations are not evidence of the truth of what deceased
may have said. *Commonwealth v. Trefethen,* 157 Mass. 180
(24 L. R. A. 235); *People v. Conklin,* 175 N. Y. 333 (67 N.
E. 624); *State v. Lentz,* 45 Minn. 177 (47 N. W. 720);
*Blackburn v. State,* 23 Ohio St. 146; *State v. Baldwin,* 36
Kans. 1 (12 Pac. 318); 4 Chamberlayne on Evidence, Sec.
2673; 6 Encyc. of Evidence 746; *State v. Asbell,* 57 Kans.
398 (46 Pac. 770); *Boyd v. State,* 82 Tenn. 161. See, contra,
*Siebert v. People,* 143 Ill. 571 (32 N. E. 431); *State v.
Fitzgerald,* 130 Mo. 407, 429 (32 S. W. 1113).

The matters stricken did not come within the rule as
stated, and there was no error in sustaining the motions
to strike.

3. CRIMINAL LAW:
evidence: non-
conclusive
character: re-
lation of par-
ties.

III. One Lenz testified that defendant
had said to him that his wife objected to
his going to "beer drinks," and, when he
met him on the road, wanted to know "if
we could have a keg of beer at our house, for his wife
objected to it, having it at his house. Q. Nothing indi-
cated that they had any trouble about it? A. Never told
me they did."

Another witness testified, in substance, that defendant
had said to him that his wife did not like him to go to
beer parties, but did not care if he drank a little at home,
and another, that she did not want him to and that "she
probably would raise the 'dickens' with him for a little
while, and then it would be all over." A motion to strike
the evidence of these three witnesses was overruled, and
this is complained of. It was competent to show the rela-
tions between defendant and wife, and, though the evidence

was not very persuasive, the ruling cannot be said to have been erroneous.

**4. CRIMINAL LAW: evidence: suicides: percentage of nonfelonious homicides.** IV.  The defendant undertook to show the number of homicides committed in the country during each year for the 13 years beginning with 1900, and of these how many were by suicide, and of the latter, the number where death was caused by firearms; also the number of accidental deaths and accidental deaths by firearms in certain years. On objection, the evidence was excluded, and rightly so. It was without relevancy, and did not tend in any decree to prove or disprove any issue.  Appellant suggests that the purpose of the evidence was to show the probabilities, on the same theory that the Carlisle Life Tables are received in evidence.  There is no analogy.  That a certain percentage of homicides are suicidal and another percentage accidental, tends in no manner to prove that a particular one was consequent of either, or that it was not felonious.  There was no error.

**5. CRIMINAL LAW: evidence: remoteness: possession of weapon.** V.  Albert Prohaska was permitted to testify that he saw defendant with a gun, not one of the revolvers found in the room, in March or April, 1914.  Defendant moved that this evidence be stricken, for that the time was too remote; and, as the circumstance was not connected with the issues in the case in any way, we are of the opinion that the motion should have been sustained.  This

**6. CRIMINAL LAW: evidence: relevancy: drinking habits of defendant.** witness also testified that he had seen defendant in Van Meter the night before the tragedy, and, over objection, that he had been drinking.  To what extent he had been drinking was not disclosed, nor did any other witness testify that he had drunk.  What relevancy this evidence had does not appear, and the motion to strike it from the record should have been sustained.

VI. Exception is taken to the portion

7. HOMICIDE:
trial: aiding
and abetting:
nonapplicable
instructions.
of the tenth instruction following:

"The State, however, is not required to show that the defendant Fred Meyer, now on trial, actually discharged the shot which resulted in the death of the said Ethel Meyer, but it is required to show beyond a reasonable doubt that he either inflicted said injury himself or was present and aided, counseled or abetted in some manner the person or persons who did inflict such injury. And if you believe from the evidence and under these instructions beyond any reasonable doubt that the said Ethel Meyer was murdered substantially as charged, and that the defendant Fred Meyer was guilty of the commission of such crime, either by inflicting the injury of which she died directly himself, or by aiding, counselling, advising, directing or abetting in the commission of such crime, then and in such case you would be warranted in finding the defendant guilty of the crime as charged in the indictment."

The converse of this also was stated. Timely objection that the evidence was not such as to warrant so instructing the jury was interposed. The same thought was expressed in the eleventh instruction, and like objection made.

A second reading of the record has failed to discover any evidence whatever even tending to show that deceased was killed by anyone other than defendant or herself. True, his mother, Ida E. Meyer, was on the premises and may have called to defendant, as the latter is said to have testified before the coroner's jury, to come in, immediately before deceased was found with the bullet in her brain. But this had no tendency to prove participation on her part. She could have done no less had the shot been fired by deceased or someone else. It disclosed knowledge that something had happened, and the most that can be said is that: (1) She was near enough so that she could have

fired the shot; and (2) she knew that something had happened. Manifestly, these facts furnished no justification for a finding that Ida E. Meyer was guilty of the crime charged. Moreover, the record is barren of evidence of any combination or understanding between defendant and his mother, or of his aiding and assisting her in any other manner whatever. The instructions were clearly erroneous and extremely prejudicial. *State v. Fuller,* 125 Iowa 212.

VII. Counsel for appellant argue that

8. CRIMINAL LAW: appeal: decisions reviewable: constitutional questions: absence of exceptions.

Section 5299, Code, 1897, is unconstitutional, and, in support of their contention, cite *State v. Gifford,* (Wash.) 53 Pac. 709; *State v. Stewart,* (S. D.) 157 N. W. 1046; *State v. Dougherty,* 4 Ore. 200. No such objection was made to the giving of Instructions 10 and 11, and the point, not having been raised in the district court, may not be considered.

VIII. Exception is taken to the ninth instruction, and also to the fourteenth. ;The former is criticized for what it omits. This was supplied by the fourteenth instruction. The latter enumerates many matters to be taken into account by the jury, and is criticized for omitting others. But the jury was directed to consider all the circumstances proven, and, from all those referred to and "all other circumstances developed on the trial," determine whether defendant was guilty. The recital did not unduly emphasize the matters mentioned, but on another trial, whether deceased was inclined to melancholia, and was pregnant, may as well be added. The jury was told therein to consider whether "the relationship between defendant and his wife, Ethel Meyer, was pleasant," and it is urged that this was error, because of there being no evidence that such relationship was other than pleasant. If so, it was proper matter for the jury to consider in defendant's favor. The instruction was not erroneous in the respects criticized.

IX. Defendant asked that the jury be
**9. CRIMINAL LAW:** instructed that the existence of the marriage
trial: instructions: uxoricide: presumption of innocence.
relation between deceased and defendant
strengthens the ordinary presumption of the
innocence of the accused, and that, unless
want of affection or less than is usual was shown by the
State, the presumption would be increased. The court declined to do so, and instead, told the jury to "consider the
relationship existing between defendant and the deceased;
the known instinct or propensities of husbands to love and
protect their wives." The ruling has our approval. The
presumption of innocence is the same in all cases. Relationship of the alleged perpetrator and victim may have a
bearing as to the accusation's being likely, but has no effect
on the presumption of innocence with which the law shields
every person. *Hawes v. State,* 88 Ala. 37, 72.

Complaint is also made of the court's
**10. CRIMINAL LAW: motive:** refusal to give the twelfth instruction requested. It, in substance, declared proof
nonessential element of crime.
of motive essential to conviction in a case
depending on circumstantial evidence only. It seems hardly
necessary to say that this is not the law. *State v. Klute,*
160 Iowa 170, 179; *State v. Whitbeck,* 145 Iowa 29. As
the jury was advised, the finding of the existence or nonexistence of a motive is an important circumstance bearing
on the guilt or innocence of the accused, but never decisive; for one might be guilty of manslaughter, at least,
without motive, and again, one might have a motive and yet
not take life. So, too, motive might exist without discovery of evidence thereof.

The weight to be attached to presence or absence of
motive necessarily depends on the facts and circumstances
of each particular case, and should be left for the jury to
determine. See *Goley v. State,* 85 Ala. 333. It was enough
to direct the jury's attention to the absence of evidence of

motive, as was done. The instruction was rightly refused.

The sufficiency of the evidence to sustain the conviction is challenged, but the record may not be the same on another trial, and for that reason we deem it best not to review the evidence at this time. Because of the errors pointed out, the judgment is reversed and the cause remanded.—*Reversed and remanded.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.