# IN THE SUPREME COURT OF IOWA

No. 18–0733

Submitted September 16, 2020—Filed December 11, 2020

**STATE OF IOWA,**

Appellee,

vs.

**FONTAE COLE BUELOW,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dubuque County, Monica L. Zrinyi Wittig, Judge.

The State seeks further review of a court of appeals decision to grant a new trial due to exclusion of medical records and limitation of an expert's review of the records. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Christensen, C.J., delivered the opinion of the court, in which Appel, Waterman, McDonald, Oxley, and McDermott, JJ., joined. Mansfield, J., took no part in the consideration or decision of the case.

David N. Fautsch (argued) and Elisabeth A. Archer of Weinhardt Law Firm, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Genevieve Reinkoester (argued), Assistant Attorney General, C.J. May, County Attorney, and Brigit A. Barnes, Assistant County Attorney, for appellee.

**CHRISTENSEN, Chief Justice.**

In this case, defendant, Fontae Buelow, is accused of murdering Samantha Link. Buelow claims Link committed suicide. A jury convicted Buelow of second-degree murder. We must decide whether Link's mental health records are admissible as evidence of Link's suicidal disposition. The mental health records contain discussion of Link's prior suicide attempts, statements of suicidal feelings, and possible mental health diagnoses that may increase the risk for suicide. On appeal, defendant argued that (1) the district court erred when it excluded Link's mental health records at trial, (2) the district court erred when it limited the defense expert's review of the medical records to only records from one year immediately preceding Link's death, and (3) the district court erred in forbidding lay testimony on Link's suicidal behavior. The court of appeals reversed on the district court's evidentiary rulings regarding Link's medical records and remanded for a new trial.

The State seeks further review of the court of appeals decision that held that evidence of Link's mental health history tending to show a suicidal disposition should not be considered character evidence. The State also seeks further review of the court of appeals determination that temporal proximity does not keep out the evidence contained within Link's medical records. Additionally, the State seeks review of the court of appeals holding that Buelow should be granted a new trial because the exclusion of Link's medical records and limitation of the expert's review of the records was not harmless error.

Upon our review, we conclude that evidence of a person's suicidal disposition is not properly analyzed as character evidence under the Iowa Rules of Evidence in cases where the defendant alleges suicide. We also determine that under the facts of this case, the temporal proximity of the

medical records is not too remote to be relevant to Buelow's defense that Link committed suicide. Furthermore, we conclude that the exclusion of evidence regarding Link's mental health records and the limitation of testimony on those records was not harmless error in this case.

**I. Background Facts and Proceedings.**

Samantha Link, a twenty-one year old, lived with her twenty-five-year-old significant other, Fontae Buelow, in a friend's basement. On March 30, 2017, the couple began the evening at a hotel hot tub. They later went to a bar to drink with friends. The couple argued at the bar, but they ended up leaving together to go home. They continued to argue once home. No one else was present at the residence. Buelow says that Link grabbed a knife from a butcher's block sitting on the kitchen counter and stabbed herself. Buelow called 911 and told the operator that Link had stabbed herself in the stomach. Buelow also told law enforcement that Link had stabbed herself one time in the stomach. Emergency responders pronounced Link dead at the scene. Link was determined to have three knife wounds. One of the stab wounds penetrated Link's heart and another went through her lung. Both of these wounds were independently fatal. The third stab wound was also in her chest area. The State charged Buelow with first-degree murder. Buelow's only defense is that Link committed suicide by stabbing herself.

Buelow filed a motion with the district court seeking Link's mental health, therapy, and counseling records, because he believed the records might contain exculpatory evidence that would bolster his suicide defense. The district court reviewed the medical records in camera and then gave both parties access to them. The records contained discussion of Link's prior suicide attempts, diagnoses that may increase the risk for suicide,

and statements of suicidal ideations. Additionally, Link discussed her relationship with a former boyfriend in the records.

The district court allowed the defense's expert to review Link's medical records but limited the review to include only records within one year's time before the date of her death. The district court did not allow the defense's expert to comment on the manner of death or whether Link acted in conformance with her past conduct. Additionally, the court excluded all medical records from trial and did not allow lay testimony on Link's suicidal disposition.

The defense filed a motion requesting the district court to expand its prior ruling on the State's motion in limine. In part, the defense requested that the district court allow its expert to review five years of Link's medical records prior to the date of her death, rather than one year, and to admit the records at trial. The defense also sought to introduce lay testimony from Link's former boyfriend that during their relationship Link had grabbed a knife during an argument. The former boyfriend did not give a time frame for this occurrence. The district court ruled that this testimony was too remote to be relevant and that it was an attempt to present improper character evidence.

The jury found Buelow guilty of second-degree murder. The court of appeals reversed on the district court's evidentiary rulings and remanded for a new trial without addressing Buelow's remaining issues on appeal.[1] The State applied for further review, and we granted its application.

---

[1] Buelow additionally raised the issues of (1) whether the district court erred in replacing a juror with an alternate after deliberations had started, and (2) whether the district court made Buelow choose between his right to an impartial jury and his right to a speedy trial, thus resulting in a constitutional violation. Because our holdings on Buelow's evidentiary issues are sufficient for a reversal of the district court's decision, we need not address the remaining issues.

**II. Standard of Review.**

"Evidentiary rulings are generally reviewed for abuse of discretion." *State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018) (quoting *State v. Tipton*, 897 N.W.2d 653, 690 (Iowa 2017)). We reverse for an abuse of discretion if evidence was excluded based on an erroneous application of the law. *Giza v. BNSF Ry.*, 843 N.W.2d 713, 718 (Iowa 2014). The standard of review for hearsay, however, is for errors at law. *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009).

**III. Analysis.**

There are five evidentiary issues that were raised on appeal: (1) whether the statements in Link's medical records constitute inadmissible hearsay evidence under Iowa Rule of Evidence 5.801, (2) whether Link's medical records are too remote to be relevant under Iowa Rule of Evidence 5.401, (3) whether evidence of a person's suicidal disposition is character evidence under Iowa Rule of Evidence 5.404(*a*), (4) whether admission of Link's medical records are unfairly prejudicial under Iowa Rule of Evidence 5.403, and (5) whether it was harmless error to exclude Link's medical records and limit the defense expert's review of them.

**A. Hearsay.** The first issue is whether Link's medical records and the statements within them are inadmissible hearsay. Hearsay is a statement that the declarant makes elsewhere than at the current trial, which is being offered "to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(*c*). Hearsay is normally inadmissible. *Id.* r. 5.802. There are exceptions to the hearsay rule that allow some statements to come in, despite the fact that they are being used to prove the matter stated. There are exceptions for "records of a regularly conducted activity," "statements made for medical diagnosis or treatment,"

and "statement[s] of the declarant's then existing state of mind . . . or emotional, sensory, or physical condition." *Id.* r. 5.803(3), (4), (6).

Under Iowa Code section 622.10 (2017), mental health records are privileged confidential information that may be accessed by a criminal defendant only pursuant to a proper showing. Early on in the litigation, Buelow met the initial threshold burden laid out in section 622.10 for in camera review of Link's medical records by establishing that the records possibly contain exculpatory information, that the information is not available from another source, and that there is a compelling need for the information so that he may present a defense in the case. A district court judge's ruling that medical records may be disseminated to parties under section 622.10 does not guarantee their admissibility, however.

Link's medical records are admissible hearsay under the exception for records of a regularly conducted activity. Iowa R. Evid. 5.803(6). This exception admits "a record of an act, event, condition, opinion, or diagnosis" if made at or near the time by someone with knowledge, if the record was kept in the course of a regularly conducted activity of the organization, and making the record was the regular practice of that organization or business. *Id.*; *see also In re Est. of Poulos*, 229 N.W.2d 721, 727 (Iowa 1975) ("We have long held that medical and hospital records are admissible, upon proper foundation, as an exception to the hearsay rule.").

Link's statements within the medical records regarding her current health, feelings, and plans are admissible under the exception allowing for "[a] statement of the declarant's then existing state of mind . . . or emotional, sensory, or physical condition." Iowa R. Evid. 5.803(3). Link's statements within her medical records regarding her history of suicidal thoughts are admissible under Iowa Rule of Evidence 5.803(4), which

allows for statements made for medical diagnosis or treatment. However, not all statements made to a health care provider necessarily fit under the exception within rule 5.803(4). For example, we have said that there may be circumstances in which a patient makes a statement to a physician that identifies the patient's domestic abuser, and that statement will not necessarily meet the exception in rule 5.803(4). *See State v. Smith*, 876 N.W.2d 180, 188 (Iowa 2016).

Regarding Link's medical records, the State concedes that any statements made by Link about her prior suicide attempts are not hearsay. To the extent that the statements within the medical records either are statements of Link's then existing state of mind or condition or are statements made for diagnosis or treatment, the district court erred in concluding otherwise.

**B. Relevance.** The second evidentiary issue is whether Link's mental health records and testimony regarding her mental health are relevant. Only relevant evidence is admissible. Iowa R. Evid. 5.402. Evidence meets the test for relevance if "[i]t has any tendency to make a fact more or less probable than it would be without the evidence" and "[t]he fact is of consequence in determining the action." *Id.* r. 5.401. Evidence is relevant if it can "throw any light upon the matter contested." *State v. Knox*, 236 Iowa 499, 514, 18 N.W.2d 716, 723 (1945). Here, Buelow is trying to introduce the medical records and testimony to support his sole defense that Link committed suicide. Because the State must prove that Buelow killed Link, evidence that negates such a theory is a fact of consequence in determining the action. Therefore, the issue is whether Link's medical records and related admissible testimony can shed any light on whether or not she committed suicide.

The State contends that much of the information in the medical records, particularly past suicide attempts, is too remote to be admissible.

> An objection based on remoteness essentially raises an issue of relevancy. "While remoteness in point of time does not necessarily render evidence irrelevant, it may do so where the elapsed time is so great as to negative all rational or logical connection between the fact sought to be proved and the remote evidence offered in proof thereof."

*State v. Engeman,* 217 N.W.2d 638, 639 (Iowa 1974) (quoting 1 Clifford S. Fishman & Anne T. McKenna, *Jones on Evidence,* § 4:1, at 380 (6th ed. 1972)). This court has said that "for remoteness, no precise timetable may be set." *Godbersen v. Miller,* 439 N.W.2d 206, 210 (Iowa 1989).

The State believes that evidence of prior suicide attempts and suicidal tendencies should only be admissible if the attempts or ideations happened near in time to the death of the deceased. *See State v. Seacat,* 366 P.3d 208, 221 (Kan. 2016) (affirming district court's holding that prior suicide attempts and contemplations three years prior to alleged suicide were not relevant to the deceased's state of mind at death); *Commonwealth v. Trefethen,* 31 N.E. 961, 962–63 (Mass. 1892) (admitting decedent's suicidal statement made one day before her death but suggesting that the statement may have been irrelevant if made two years prior and under different circumstances).

Buelow wants to expand his expert's review of Link's medical and mental health records to a period of five years before Link's death and admit records that show Link's suicidal disposition. He also wants to admit testimony from a former boyfriend on Link's suicidal behavior. The discussion of Link's prior suicide attempts occurred a little under three years from the date of her death. Although the former boyfriend did not recall the date of the argument the defense sought for him to testify to, their relationship had ended just eight months prior to Link's death. The

issue is whether the testimony and Link's medical records showing a prior suicide attempt and suicidal disposition are too remote to have any tendency to make it more or less probable that Link later committed suicide.

Over one hundred years ago, this court was faced with a similar fact pattern in *State v. Meyer*, in which the defendant was charged with murdering his wife and asserted suicide as his defense. 180 Iowa 210, 214, 163 N.W. 244, 245 (1917). There, we said that evidence tending to show a predisposition to suicide is admissible. *Id.* at 214, 163 N.W. at 246; *see also* 41 C.J.S. *Homicide* § 332, at 64–65 (2014) ("Where the theory of the defense is that the deceased committed suicide, any evidence otherwise competent tending to show that the deceased came to his or her death by the deceased's own act is admissible."). "Such predisposition may be shown by acts or declarations of the deceased within such reasonable time before the killing as that there may have been some tendency to establish such a condition of mind when this happened." *Meyer*, 180 Iowa at 214, 163 N.W. at 246.

In *State v. Beeson*, another homicide case from the early 1900's, this court similarly determined that the trial court had erred in keeping evidence of the deceased's suicidal disposition out. 155 Iowa 355, 136 N.W. 317, 321 (1912). This court cited several other courts that held that suicidal declarations made as far back as three to six years prior to the alleged murder were admissible to support a theory of suicide. *Id.* at 355, 136 N.W. at 321 (citing *People v. Conklin*, 67 N.E. 624 (N.Y. 1903); *Blackburn v. State*, 23 Ohio St. 146 (1872)).

Evidence of an alleged victim's suicidal disposition has been admitted in more recent years in *State v. Marti.* 290 N.W.2d 570, 575 (Iowa 1980). There, the defendant was initially charged with murdering his

girlfriend. *Id.* At trial, evidence was allowed in showing that the deceased was depressed, had made suicidal statements, and had spoken to others about joining her two brothers who had committed suicide. *Id.*

In analyzing relevance in the present case, a New Mexico Supreme Court case held that suicide attempts going back more than ten years were relevant to an alleged homicide when the defense was suicide. *See State v. Stanley*, 37 P.3d 85, 90 (N.M. 2001); *see also State v. Jaeger*, 973 P.2d 404, 407 (Utah 1999) (determining that mental health records from three to four years prior to an alleged homicide were relevant when the defense was suicide).

While we understand that much can change in even one-year's time, especially considering Link was participating in mental health treatment, the State did not present any medical opinions or psychiatrist's opinions as to why there can be no "rational or logical connection" between a suicide attempt and an alleged suicide three years later. *State v. Engeman*, 217 N.W.2d at 639 (quoting Fishman § 4:1, at 380). Relevance decays as time elapses, but for a young woman of twenty-one, suicide attempts and mental health diagnoses from a few years prior are clearly relevant to the question of whether she took her own life or was killed by Buelow. Therefore, we determine that Link's mental health records and testimony relating to her suicidal disposition are relevant in this case.

**C. Character Evidence.** The third evidentiary issue is whether evidence of a person's suicidal disposition is properly characterized as character evidence. The district court concluded that under *State v. Jacoby*, it was required to exclude Link's mental health records because Buelow did not bring the deceased's character into issue by raising a self-defense claim. *See* 260 N.W.2d 828, 837 (Iowa 1977). On appeal, the State did not cite *Jacoby* in its brief but instead offered a new rule in which

temporal proximity is the determining factor in whether mental health evidence is character evidence. For the reasons stated above, we do not find this argument persuasive.

Iowa Rule of Evidence 5.404(*a*)(1) keeps out "evidence of a person's character or character trait" if it is being used "to prove that on a particular occasion the person acted in accordance with the character or trait." Subsection (*b*) of the rule also prohibits "[e]vidence of a crime, wrong, or other act" when it is used "to show that on a particular occasion the person acted in accordance with the *character*." *Id.* r. 5.404(*b*)(1) (emphasis added). The question we must answer in this case is whether a suicidal disposition is a *character* trait. If not, then evidence that is being used to prove Link's suicidal disposition in this case should not have been excluded as character evidence.

The Iowa Rules of Evidence do not define "character." According to one commentator, evidence of a suicidal disposition should be analyzed under the character evidence rules. *See* 7 Laurie Kratky Doré, *Iowa Practice Series*: *Evidence* § 5.404:3(A) & n.5, at 245 (2019–2020 ed. 1999). The Iowa Practice Series for Evidence reads the exception in rule 5.404(*a*)(2)(A) to permit "[i]ntroduction of victim character testimony by an accused . . . in any criminal case but will generally be available only to establish self-defense, some defenses in sexual abuse cases, and a suicide defense in a murder prosecution." *Id.* (footnote omitted) (noting that "the suicidal characteristics of the victim could be relevant"). However, no explanation is given for why a victim's suicidal disposition should be analyzed under the character evidence rules.

This court has said, "[r]oughly stated, character is what a man actually is, while reputation is what his neighbors say he is." *State v. Poston,* 199 Iowa 1073, 1074, 203 N.W. 257, 258 (1925). "[Q]uarrelsome,

violent, aggressive or turbulent character" is character evidence. *Klaes v. Scholl*, 375 N.W.2d 671, 675 (Iowa 1985) (quoting *Jacoby*, 260 N.W.2d at 838); *see also State v. Webster*, 865 N.W.2d 223, 243 (Iowa 2015) (determining that a party's act of striking his ex-wife was relevant to proving a violent character). On the other end of the spectrum, evidence used to prove a person's traits for "honesty, integrity, and good citizenship" or "peacefulness and nonviolence" is considered character evidence. *State v. Hobbs*, 172 N.W.2d 268, 271 (Iowa 1969).

Thus, Iowa caselaw shows a framework of character evidence being "good" or "bad" traits of a person. *See* 1 Kenneth S. Broun et al., *McCormick on Evidence*, § 186 Character, in general, at 1131 (Robert P. Mosteller et al. eds., 8th ed. 2020) (describing character traits as "blameworthy or praiseworthy"); *Character evidence*, *Black's Law Dictionary* (11th ed. 2019) (defining character evidence as "[e]vidence regarding someone's general personality traits or propensities, of a praiseworthy or blameworthy nature; evidence of a person's moral standing in a community").

The State concedes that mental health illnesses do not fit within the traditional framework of character evidence and suggests that the question in this case "should not be whether a person's mental health history is character evidence, but rather, whether the character evidence rules should apply to this mental health history." The State argues that rule 5.404 should exclude evidence if its only use is to establish propensity to act in a certain way. Under the State's theory, the character evidence rules apply to Link's mental health history, because Buelow is offering the evidence to prove Link's propensity for self-harm. This reads rule 5.404(*b*) too broadly. As the United States Supreme Court has said on the analogous Federal Rule of Evidence 404(b), the rule only comes into play

to "protect[] against the introduction of extrinsic act evidence when that evidence is offered solely to prove *character*." *Huddleston v. United States*, 485 U.S. 681, 687, 108 S. Ct. 1496, 1500 (1988) (emphasis added). Evidence of a person's prior behavior or act may be introduced "if there is a noncharacter theory of relevance and the evidence is material to a legitimate issue." *State v. Plain*, 898 N.W.2d 801, 814 (Iowa 2017). Link's prior suicidal behavior stems from mental health issues rather than from a character trait. Thus, evidence of Link's suicidal disposition has a noncharacter theory of relevance and should not be barred by rule 5.404(*b*).

The conclusion that evidence of a suicidal disposition is not character evidence follows past Iowa precedent, which has allowed in evidence of victims' suicidal dispositions and ideations to support the criminal defendant's defense of suicide in homicide cases. *See Marti*, 290 N.W.2d at 575; *Meyer*, 180 Iowa at 214, 163 N.W. at 246; *Beeson*, 155 Iowa at 362–63, 136 N.W. at 320.

In its application for further review, the State cites a homicide case, *State v. Heemstra*, to support its contention that treating mental health records as character evidence is not a novel concept. 721 N.W.2d 549 (Iowa 2006), *superseded in part by statute*, 2011 Iowa Acts ch. 8, § 2 (codified at Iowa Code section 622.10(4)(*a*)(2) (2013)), *as recognized in State v. Leedom*, 938 N.W.2d 177, 190 (Iowa 2020). In *Heemstra*, the defendant had asserted a self-defense claim and wanted access to the victim's psychotherapist records because he thought the records might contain evidence of the victim's character traits of violence, anger and aggression. *Id.* at 561. This court determined that a limited disclosure of the information within the decedent's medical records was appropriate, because the information might help bolster the defendant's self-defense

claim.  *Id.* at 563.  *Heemstra* and the present case are distinguishable on their facts.  In *Heemstra*, the medical records contained statements that showed the victim's violent tendencies that would fall under character evidence when the defendant was claiming self-defense.  In contrast, Link's medical records show suicidal ideations and prior suicide attempts.  As explained above, evidence of a person's suicidal disposition is not character evidence.

**D.  Probative Value v. Prejudicial Effect.**  The fourth evidentiary issue is whether Link's medical records should be excluded from trial under Iowa Rule of Evidence 5.403.  Even relevant evidence can be inadmissible if the evidence's probative value is "*substantially* outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Iowa R. Evid. 5.403 (emphasis added).  We determine whether evidence should be excluded under rule 5.403 through a two-part test.  *Einfeldt*, 914 N.W.2d at 784.  "First, we consider the probative value of the evidence.  Second, we balance the probative value against the danger of its prejudicial or wrongful effect upon the triers of fact."  *Webster*, 865 N.W.2d at 242 (quoting *State v. Huston*, 825 N.W.2d 531, 537 (Iowa 2013)).

Courts should use rule 5.403 sparingly since it allows for relevant evidence to be excluded.  *Midwest Home Distrib., Inc. v. Domco Indus., Ltd.*, 585 N.W.2d 735, 745 (Iowa 1998); *Williams v. Hedican*, 561 N.W.2d 817, 832 (Iowa 1997).  "[A]ll powerful evidence is prejudicial to one side.  The key is whether the danger of unfair prejudice substantially outweighs the evidence's probative value . . . ."  *State v. Neiderbach*, 837 N.W.2d 180, 202 (Iowa 2013) (emphasis omitted); *see also Huston*, 825 N.W.2d at 537 (noting that it is common in child abuse cases that "much evidence will be

'at least somewhat prejudicial' ") (quoting *State v. Mitchell*, 633 N.W.2d 295, 301 (Iowa 2001) (Neuman, J., dissenting))). If the balance between the evidence's probative value and prejudicial effect is relatively close, the evidence should be admitted.

The State argues that the evidence was prejudicial because symptoms of mental illnesses vary widely and the defense expert's speculation about the symptoms Link experienced on the night of her death would create a minitrial on Link's mental health. This argument fails to illustrate why the evidence is *unfairly* prejudicial to the extent that it *substantially* outweighs its probative value.

We have explained that the accused's right to present evidence that the deceased committed suicide is "a most important one." *Beeson*, 155 Iowa at 362, 136 N.W. at 320. Additionally,

> the death of the patient is a fact to consider in balancing the rights of a criminal defendant to exculpatory information in confidential records. After all, "[t]he holder of the privilege has little private interest in preventing disclosure, because he is [deceased]."

*State v. Thompson*, 836 N.W.2d 470, 490 (Iowa 2013) (first alteration in original) (quoting *United States v. Hansen*, 955 F. Supp. 1225, 1226 (D. Mont. 1997), *rev'd on other grounds*, No. 97-30214, 1998 WL 255192 (9th Cir. 1998) (unpublished table decision)); *see also Heemstra*, 721 N.W.2d at 563 (concluding that disclosure of medical records was appropriate where defendant was faced with "the most severe penalty provided by our law" and "[t]he subject of the privilege is deceased").

Because Buelow's only defense to his murder charge is that Link committed suicide, the probative value of evidence showing Link's possible increased risk for suicide is high. We do not believe that evidence of Link's suicidal disposition will have an unfairly prejudicial effect by creating a

minitrial on Link's mental health. *See State v. Drach*, 1 P.3d 864, 869 (Kan. 2000) (noting that a majority of the cited jurisdictions allow into evidence a suicide theory "and that the jury is capable of determining its validity and attaching the proper weight"). It is not the type of evidence that has an "undue tendency to suggest decisions on an improper basis." *Huston*, 825 N.W.2d at 537 (quoting *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000) (en banc)). Furthermore, we are not persuaded by the State's argument that Buelow's expert testimony should be excluded because it is mere speculation. The State will have the opportunity to cross-examine the defense's expert witness and present expert testimony on its own to try to convince the jury of that. *See Williams*, 561 N.W.2d at 832 (explaining that extensive cross-examination better aids the jury in performing its function than exclusion of relevant evidence). The admission of evidence regarding Link's mental health will not be a free-for-all. A district court judge has the authority to make discretionary calls for the purpose of protecting the integrity of the alleged victim in these cases. Therefore, the district court erred in holding that Link's increased risk for suicide was barred by rule 5.403.

**E. Harmless Error.** The final evidentiary issue is whether the district court's exclusion of Link's medical records and related admissible testimony as evidence at trial was harmless error under Iowa Rule of Evidence 5.103(*a*). A reversal is required for the improper admission or exclusion of evidence only if the exclusion affected a substantial right of a party. Iowa R. Evid. 5.103(*a*). In a case of nonconstitutional error, "we presume prejudice—that is, a substantial right of the defendant is affected—and reverse unless the record affirmatively establishes otherwise." *State v. Sullivan*, 679 N.W.2d 19, 30 (Iowa 2004). This court has "relied on the existence of overwhelming evidence in finding harmless

error." *State v. Parker*, 747 N.W.2d 196, 210 (Iowa 2008) (overwhelming guilt was present when multiple eyewitnesses identified the defendant, the defendant admitted to another that he committed the crime, and the defendant's alibi could not be corroborated).

A criminal defendant's right to present evidence that the deceased committed suicide is "a most important one." *Beeson,* 155 Iowa at 362, 136 N.W. at 320. Buelow's only defense in this case is that Link stabbed herself. Because the district court did not allow admission of any of Link's medical records or related admissible testimony, Buelow was barred from introducing evidence that Link had prior suicide attempts, suicidal ideations, and possible medical diagnoses that would increase her risk for suicide. *See Paredes,* 775 N.W.2d at 571 (declining to find harmless error when evidence was excluded at trial that "would have clearly aided the defense in its only available theory").

Furthermore, we do not conclude that the State's case against the defendant rises to the same amount of overwhelming evidence of guilt we have found sufficient to avoid harmless error in the past. Unlike *State v. Parker,* there were no eyewitnesses. Both sides presented expert evidence that suggested the physical scene of the death better fit with their theory of what occurred. Therefore, exclusion of the medical records and limitation of related admissible testimony was not harmless error in this case.

**IV. Conclusion.**

For the aforementioned reasons, the district court judgment is reversed and remanded, and we need not address the remaining issues on appeal.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except Mansfield, J., who takes no part.